### Austin, et al. v. Sellars' Administrator, et al.

(Decided April 22, 1924.)

### Appeal from Graves Circuit Court.

1. Work and Labor—No Compensation for Services by Child in Absence of Express Promise.—Services by a child to a parent cannot be charged for unless performed under an express promise that they are to be paid for.
2. Executors and Administrators—Daughters Held Entitled to Recover for Care of Mother.—Daughters were entitled to payment from estate for services rendered mother, where she promised to pay a certain amount therefor, and such promise was evidenced in writing.
3. Executors and Administrators—Promise to Pay Daughter for Services Held Not to Include all Services.—Where a mother, whose health was very bad for some months before her death, necessitating practically constant attention, signed instruments whereby she agreed to pay each of. two daughters "for taking care of me in my last days," held, that this did not include services rendered by one of the daughters during several years preceeding the mother's death.
4. Descent and Distribution—House Built on Land of Daughter's Husband Held Not to be Treated as Advancement.—Where deceased built house on land of her daughter's husband under an agreement that he was to own it at her death and she occupied the house for seven years until her death under the agreement, there is no ground for charging the house to the daughter as an advancement; deceased not intending a gift to the husband in consideration only of his being her daughter's husband.

JAMES De BORD and W. S. FOY for appellants.

HESTER, SEAY & HESTER for appellees.

OPINION OF THE COURT BY J. P. HOBSON, COMMISSIONER—Reversing on original appeal and affirming on cross-appeal.

Mrs. Bettie Sellars died on April 21, 1921, leaving surviving her three daughters, Victoria Nance, Martha

Austin and Annie Gossett Barley, and two grandsons, the children of a deceased son. On November 11, 1921, B. F. Nance qualified as her administrator and brought this action in equity for the settlement of the estate. The facts shown are briefly these:

Some years before her death Mrs. Sellars lived with her daughter, Mrs. Nance, but unpleasant conditions arose and she left there. She then proposed to Steve Austin, the husband of her daughter, Martha Austin, that she would build a small house on a part of his lot and live in it as long as she lived and at her death it was to be his. The purpose was that she might be near her daughter, Mrs. Austin, so that she could look after her and help her as she was getting infirm. Under this arrangement Mrs. Sellars built the house at a cost of $525.00 on Austin's lot and lived in it the remainder of her life, something over seven years. Her health became very bad for some months before her death. Her daughters, Mrs. Austin and Mrs. Barley, took it turn about staying with her every other night and both looking after her by turn during the day. She was an invalid, in a deplorable condition, and needed practically constant attention. While this was going on she signed two papers reading as follows:

"I hereby agree to pay Martha Austin five dollars a day and night for taking care of me in my last days. After this has been paid, share equal with the rest.

"Bettie Sellars."

"I hereby agree to pay Annie Gossett five dollars a day and night for taking care of me in my last days. After this has been paid, share equal with the rest.

"Bettie Sellars."

The proof shows that these papers were executed in the presence of two witnesses, who signed them as witnesses in her presence and that they were executed pursuant to a purpose she had formed some time before and frequently expressed.

At the time of her death her son-in-law, Steve Austin, owed her a note for $1,400.00. As requested by her and to save the cost of administration of the estate he sold at public sale her personal property, which brought $102.00. He paid the burial expenses and also paid Mrs.

Barley $300.00 and paid his wife $750.00. The interest on his note from the last settlement with her amounted to $63.00 and he had paid out after that settlement for her $114.00. These payments exhausted the money in his hands.

It is earnestly insisted that he should not have paid Mrs. Barley or Mrs. Austin anything. It is true that services by a child to a parent cannot be charged for unless performed under an express promise that they are to be paid for. The services rendered her were so unusual that naturally the mother felt that these two daughters who had waited on her so tenderly should be paid. The promise that they should be paid is not only evidenced by the writing but by her repeated declarations, and these were no more than might reasonably be expected from a good woman in her circumstances. She needed not only care but she needed love and the tender attention that only love bestows. There is no reason why she should not be allowed to pay for these services or that her promise to pay should not be enforced. Mr. Austin paid Mrs. Barley $300.00 for sixty days' services at $5.00 a day. He paid his wife $750.00, evidently because she had waited on her mother during the years that the mother had lived there by her, but the writing does not include these services. The writing only includes "taking care of me in my last days," and by this she evidently referred to the services they had rendered the preceding winter and spring. Mrs. Austin should have been paid only the same as Mrs. Barley, for they rendered about the same service during this period. Austin agreed then that Mrs. Barley should be paid for sixty days' service. The facts were fresh in their minds and what he agreed to pay Mrs. Barley is perhaps as near right for Mrs. Austin as any sum this court could fix.

On the return of the case to the circuit court the court will credit Steve Austin by $300.00 paid Mrs. Barley and by $300.00 of the amount paid Mrs. Austin and will carry out the account on this basis as given in the judgment.

On the cross-appeal it is insisted that the house in which Mrs. Sellars lived should be charged to Mrs. Austin as an advancement. This house was built on Austin's land under a distinct agreement well established by the proof that Mrs. Sellars was to occupy it as long as she

lived and after her death it was to be the property of Austin. The house stands on his land; it is a part of the land; the title to it is in him. He cannot be charged with anything for this house. Mrs. Sellars occupied the house for seven years and every part of the agreement under which the house was built was faithfully lived up to. There is no ground for charging this house to Mrs. Austin as an advancement. It was not built for her or with any view to a portion of the estate.

A conveyance of land or a gift of personalty by her parent to her husband "in consideration only of his being her husband" will be deemed an advancement to the wife. (Barber v. Taylor, 9 Dana 84). But this was not the consideration here. The purpose of Mrs. Sellars was to acquire a home as long as she lived, and this she enjoyed. It was a reasonable arrangement and there is no reason that the court should give it an effect not intended by the parties. (18 C. J. p. 915).

The judgment on the cross-appeal is affirmed, on the original appeal the judgment is reversed and the cause remanded for a judgment as above indicated.