### Clark, Administrator of Sarah Qualls v. Hale.

(Decided June 9, 1925.)

### Appeal from Hopkins Circuit Court.

1. Executors and Administrators—What Kind of Services Rendered by Relatives in Time of Sickness Does Not Obligate Recipient to Pay Therefor, Stated.—Sporadic visits to near relatives in time of sickness, accompanied by attentions prompted by affection or such attentions as should be so prompted, are not services raising an obligation of payment upon the part of the recipient.

2. Executors and Administrators—Niece Rendering Extraordinary Services to Aunt Entitled to Recover as on Implied Contract to Pay.—Niece, rendering extraordinary services to aunt over period of five years and with expectation of compensation therefor, held entitled to recover as on implied contract to pay, despite family relation.

3. Executors and Administrators—In Suit by Niece for Services Rendered to Aunt, Based on Implied Contract, Defendant's Motion for Peremptory Instruction Held Properly Refused.—In suit by niece against estate, for services rendered to deceased aunt for a period of five years, based on implied contract to pay therefor. defendant's motion for peremptory instruction held properly refused.

4. Executors and Administrators—Evidence Held to Sustain Recovery Against Estate for Services Rendered by Niece, Under Implied Contract to Pay Therefor.—Evidence held to sustain recovery against estate for services rendered to deceased by plaintiff, her niece, under implied contract to pay therefor.

5. Executors and Administrators—Recovery of $500.00 Against Estate for Services Rendered to Deceased Held Not Excessive.—Recovery of $500.00 against estate for extraordinary services rendered to decedent by her niece during the last five years of deceased's illness held not so excessive as to show passion or prejudice.

6. Evidence—Witnesses Held Properly Allowed to Give Opinion as to Value of Services Rendered by Plaintiff to Deceased.—In suit against estate for services rendered to deceased during her illness, permitting witnesses, after detailing facts from their knowledge, to give their opinion as to the value of the services rendered, held not error.

7. Appeal and Error—Witnesses—In Suit to Recover for Services Rendered to Deceased, Witness for Estate Competent as to Some Matters, but no Prejudice Shown by Sustaining Objection to Competency.—In suit by niece against estate to recover for services rendered to deceased, a husband of another niece would have been competent to testify as to all matters not involving conversations or transactions with deceased, and as to the latter could have testified as to anything that occurred in the presence of plaintiff; but, there being no avowal as to what his testimony would be, defendant cannot be held to have been prejudiced by sustaining an objection to his competency.

8. Evidence—Testimony, that Other Heirs Performed as Many Services as Plaintiff, Held Properly Rejected as Conclusion.—Testimony, if otherwise competent, that other heirs performed as many services for deceased as did plaintiff, held properly rejected, as stating a mere conclusion.

COX & GRAYOT for appellant.

CHARLES G. FRANKLIN and H. S. F. BAILEY for appellee.

Opinion of the Court by Judge McCandless—Affirming.

In this action Sarah C. Hale recovered the sum of $500.00 against the estate of her deceased aunt, Sarah Qualls, as compensation for services rendered for the latter in her lifetime under an implied contract, and the personal representative appeals.

The petition did not state the relationship of the parties and it is admitted that a demurrer thereto was properly overruled, but it is earnesly insisted that a peremptory instruction for the defendant should have been given, and that the verdict is excessive.

The facts are: Mrs. Sarah Qualls was an aged widow lady living alone in the town of Dawson Springs; she owned her residence; had seven or eight hundred dollars deposited in bank and drew a pension of $50.00 per month. She had been afflicted for several years with phthisic and at intervals suffered intensely for days at a time.

Her only near relatives were three nieces, all of whom were married and had homes of their own. She seems to have been estranged from two of these, but was quite intimate with the third, Sarah Hale, who together with her husband lived on a farm eleven miles from Dawson Springs.

Plaintiff's evidence is to the effect that Sarah visited her aunt regularly and remained with and nursed her when she was ill, doing the house work, including sweeping, cooking, washing and bringing in the coal, and otherwise giving the old lady such attention as her sickness required. This attention continued during the five years immediately preceding her aunt's death. On one occasion when she had to return home she procured a neighbor to stay with her aunt until she returned. It is further shown that on one occasion in winter she walked from her home to her aunt's residence to wait upon her, and during her last illness was with her almost constantly.

No contract to pay for these services was proven, but a number of witnesses testified that the deceased had said to them that she was going to pay Mrs. Hale for taking care of her, thus: "Said she wanted her to have everything; she would pay her to take care of her. . . ."

"Q. When did she say that? A. All during her life; she wanted Mrs. Hale to have everything

she had, to pay her for taking care of her.  (Mrs. Laura Wolfe.)

"Q.  Did you ever hear Mrs. Sarah Qualls make any statements about paying anybody for waiting on her?  A.  She said she was going to pay Mrs. Hale.

"Q.  How?  A.  Said she was going to sell her property and pay her.

"Q.  Pay her for what?  A.  For the work she had done.  (Mrs. Addie Wyatt.)

"Q.  Did you ever hear Mrs. Qualls say anything about arrangements to pay Mrs. Hale for those services; if so, tell the jury what it was.  A. I have heard her say that she was arranging for Mrs. Hale to have everything she had to pay her for what she had done for her; said she was doing more for her than anyone else.  She has told me that a number of times in my house and in her house, too. (Mrs. Crawford Brantley.)

"Q.  Do you know anything about any services rendered to her by anybody; about washing and cooking and things like that?  A.  No, sir; all she said over to my house one day, said she wanted Mrs. Hale to have everything she had because she had been there and waited on her any time she was sick and she wanted her to have it."    (Crawford Brantley.)

J. B. Rice testified:

"She came there one evening about three o'clock and said she wanted me to write her will; she wanted to know could I write a will and I told her I could and she says, 'I want you to do it,' and I says, 'All right, Aunt Kit, but I can't write it this evening, but if you will tell me how you want it, I'll fix it up for you in the morning,' and I picked up a tablet and asked her full name and her age and then asked how she wanted her property disposed of and she said, 'I want all my legal and just debts paid and my doctor's bill and burial expenses, and I want the remainder of my property, whatever it may be, to go to Sarah Hale, and I want her to be executor of the estate without bond.

"Well, I said, you come back tomorrow, and I will have it ready for you.

"Q. Did she say she was willing to do it? A. Said, 'I want to will it to Sarah Hale as she has taken care of me during all of my sickness."

On the other hand, the witnesses for the defendant intimate that the old lady was not sick often, or long at any time; that Mrs. Hale brought produce to town for sale and stopped with her aunt as a matter of mutual convenience, and in general minimize the services rendered.

Sporadic visits to near relatives in time of sickness accompanied by attentions prompted by affection or such attentions as should be so prompted are not the character of services that raise an obligation of payment upon the part of the recipient, but this is not that character of service. According to her evidence appellee manifested almost filial affection, and also performed services under conditions that indicated an expectation of compensation.

Deceased lived alone with no one to care for her. When ill she was helpless and seemed to rely solely upon appellee, who willingly left her own home and family and attended her. This occurred repeatedly and at all times when her aunt was in need of such attention during a number of years; her sense of duty as well as her loyalty and fidelity being manifested by walking eleven miles in wintry weather to minister to her charge, and seeing that some one else took her place when she was called away.

The facts stated indicate that appellee was quite poor and while her aunt was not in affluent circumstances she had sufficient estate and income to provide for her necessities. She evidently desired and appreciated the services of her favorite niece; she also knew appellee's financial condition and the sacrifice she was making and recognized a financial obligation upon her part to recompense her, which she repeatedly expressed by telling her friends and neighbors that she intended to pay her by giving her everything she had and by having a will prepared expressing her wishes.

These facts show extraordinary services and also an expectation upon the part of the recipient to pay for them. While Mrs. Hale might not testify as a witness, from the evidence it is reasonably certain that the same expectation existed on her part. Under such circumstances, notwithstanding the family relation, we think a recovery may be had under an implied contract, and the motion for a peremptory instruction was properly over-

ruled. Nor do we think the verdict is not sustained by the evidence. While the evidence is conflicting and indefinite in some particulars, the jury were authorized to believe the witnesses for appellee, and the amount is not so excessive as to strike one at first blush as being the result of passion or prejudice.

The court did not err in permitting different witnesses after detailing the facts from their knowledge to give their opinion as to the value of the services rendered. The evidence of the witness, Rice, detailing the statements of the decedent in reference to the preparation of her will, was competent as tending to show the character of services rendered and the expectation of the parties in reference thereto. The court admonished the jury that it could not be considered for any other purpose, hence there was no error in its introduction.

Eli Coates and Charles Morris, as husbands of the other two nieces, were offered as witnesses in behalf of the estate. Objection was made to Coates testifying on the ground of incompetency and this was sustained. He would have been a competent witness as to all matters not involving conversations or transactions with the deceased; and as to these could have testified as to anything that occurred in the presence of plaintiff, but no avowal was made as to what his testimony would have been, and therefore we are unable to say that defendant was prejudiced thereby.

Morris was permitted to testify, but an objection was sustained to one question. It was avowed that he would have answered this by saying that the other heirs performed as many services for the decedent as did the plaintiff. If otherwise competent this would have been a mere conclusion, and the court did not err in rejecting it.

On the entire record, perceiving no error the judgment is affirmed.