## Dean's Executor v. Griffin, et al.

(Decided January 18, 1927.)

### Appeal from McCracken Circuit Court.

1. Executors and Administrators—Evidence Held to Sustain Allowance of $2,500.00 for Board, Lodging and Care of Deceased During Period of Four Years.—In suit to settle estate of deceased, evidence held to sustain allowance of $2,500.00 for board, lodging, care, nursing and attention during period of four years, while decedent was suffering from cancer on face.

2.  Trial—Where Original Petition Pleaded Express Contract, and Amendment Pleaded Implied Contract, Court did Not Err on Pleadings in Submitting Both Issues.—Where original petition, setting up claim for board, lodging and care of decedent, pleading express contract, and amendment pleaded implied contract, both pleadings were controverted, and there was no motion to elect, court did not err on pleadings in submitting both issues.

3.  Trial—Instruction on Express and Implied Contract Held Not Prejudicial, Because there was no Evidence of Express Contract, Where Correct Definition of Implied Contract was Given.—Instruction authorizing recovery on both express and implied contract without defining express contract, in action by proprietor of boarding house for board, lodging and care of decedent, in which there was no evidence of express contract, though error, held not prejudicial, where correct definition of implied contract, applicable to evidence, was given.

4.  Executors and Administrators—Boarding House Proprietor Need Not Allege or Prove Express Contract for Boarding or Lodging in Presenting Claim Against Decedent's Estate.—One running boarding house, in making claim against decedent's estate for board or lodging, is not required to allege or prove express contract.

5.  Executors and Administrators—One Making Claim for Board, Lodging and Care of Decedent Held Entitled to Recover Under Implied Contract for Nonpersonal Services.—One making claim for board, lodging, care, nursing and attention of decedent during four years, while he was suffering from cancer on face, held entitled to recover under implied contract for nonpersonal services.

WHEELER & HUGHES for appellant.

J. B. ALLENSWORTH for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

In a suit to settle the estate of Frank Dean, deceased, Mrs. Mattie Grief filed a claim for $5,760.00 for board, lodging, care, nursing and attention during a period of four years, being at the rate of $4.00 per day for 1,440 days. Appropriate pleadings made up the issues and on an issue out of chancery she was awarded a verdict of $2,500.00, for which judgment was rendered. The executor appeals.

As first filed with the executor the claim was for $400.00. Later a supplemental claim properly verified was presented, increasing the amount to the figure above stated. The executor denied all liability and some feeling developed in the prosecution of the suit.

Frank Dean was formerly a professional musician and had acquired an estate valued at between fifty thou-

sand and sixty thousand dollars, consisting mostly of un-improved real estate in the city of Paducah, upon which there were four or five small buildings which were rented at a very low figure. However, he also had money on de-posit at the various banks in the city, the aggregate of which was over $1,900.00 at the time of his death. His wife had died several years before his death and his only near relatives were two sisters and some nephews living in distant cities, and whom he seldom saw. After the death of his wife he retained a room in each of three houses in which he lodged alternately. One of these was next to the boarding house owned by Mrs. Grief, at which place he also lodged at times. He sometimes took his meals in his room, at others in restaurants and Mrs. Grief's board-ing house. Some seven or eight years before his death a cancer appeared on the right side of his face between his nose and eye. This developed and finally produced his death.

The evidence for appellee was that for four years previous to his death he suffered greatly from this malady which ate away the flesh and ligaments, including the eyeball; that it suppurated and unless dressed fre-quently the discharge would flow over his face and down upon his mustache and clothes; that while in this condi-tion he took his meals and lodged for many months with Mrs. Grief, who dressed his face as often as six or seven times a day. This continued at intervals until about a week before his death when he was sent to a hospital. It is further shown that from time to time he gave her checks for small amounts and would say to her: "Mrs. Grief, I am paying you this check, but in this check I don't mean to pay you for all the things you have done for me, for your kindness and your nursing me and taking care of me, I will set aside a sum in my estate for you." However, none of these checks were produced on the trial, and there is direct proof of only about seven of these, ranging in amount from $6.00 to $10.00.

Another witness testifies that he asked him why he did not sell his property and get a nurse, to which he re-plied: "Don't you know a nurse would not take care of me, as filthy as I am and the way I smell?" In discussing his will with this witness he said, "You know Mrs. Grief is as close to me as a mother," and in another conversa-tion, "You know I can't forget Mrs. Grief." And that Mr. Dean told him frequently "That he intended to see

that Mrs. Grief was well paid for what she had done for him." To another intimate friend in discussing his troubles he said, "Had it not been for Mrs. Grief he did not know how he would have fared. . . . She was so very attentive to him and that he would see that she was well remembered for the services she had rendered." Other witnesses testify that Mr. Dean, in addition to taking meals at the boarding house, lodged with Mrs. Grief for as long as eighteen or twenty months, and that they saw her dressing his face and cleansing his clothing. It does not appear that he made any mention of Mrs. Grief in his will.

On the other hand appellant shows that Mr. Dean was a careful, frugal man who paid his obligations as they accrued and was very punctilious in this respect. At the time of his death the only other claim against his estate was for $25.00; that he had money in the bank; that while he was afflicted with a cancer, he was robust, active and able to attend to business, visiting his friends at their stores until a short time before his death; that the cancer produced no odor; that he concealed it by a patch on his face and that the character of his affliction was not generally known; that he spent most of his time at his various homes and took his meals at home and at restaurants; that he lodged at Mrs. Grief's for a few weeks and occasionally took his meals there, for all of which he paid.

His family physician testified that he waited on Mr. Dean for several years; that he would come around to his office for this purpose every day when he was able, but that about every month he would get "past going;" that in bad weather he stayed at Mrs. Grief's and she would wait upon him; that he might have stayed there two or three weeks at a time, but that he cannot remember; that whenever he wanted a nurse he would go to Mrs. Grief; that while he lived in his own room next to Mrs. Grief's property he boarded there a good deal of the time.

Another witness testifies that after Mr. Dean's death, Mrs. Grief was speaking to him about Mr. Dean and telling him how good he had been to her, saying that he would bring some provisions over to her house and she would cook them and sometimes go over and make up his bed and sweep his house, but that he always paid her well

for everything she had done; that he would rather she would have it than his heirs, she was a better friend to him than they were. . . . She said she thought she ought to have that house; she had done more for him than anyone else.

From the above *resume* it will be seen that the evidence is quite conflicting, and it cannot be said that the verdict rendered by the jury was flagrantly against the weight of the evidence as claimed by appellant.

(2) The court gave the following instructions to the jury:

"The court instructs the jury that if you shall believe from the evidence in this case that the board and services mentioned in the petition and in the evidence were rendered by Mrs. Mattie Grief to the defendant, Frank Dean, under a contract, either express or implied, or with the intention on the part of the said Mrs. Mattie Grief to charge and an intention on the part of deceased to pay for such services and board, then you should find for the claimant, Mrs. Mattie Grief, the reasonable value of such services and board, not exceeding $5,760.00, the amount claimed in the petition, unless you shall find for the plaintiff, City National Bank, executor, under instruction 2 herein."

(2) "Although you may believe from the evidence that the claimant, Mrs. Mattie Grief, rendered the services and board mentioned in the evidence to the deceased, Frank Dean, yet if you shall further believe from the evidence that the deceased paid Mrs. Mattie Grief for such services and board rendered by her, then the law is for the plaintiff, City National Bank, executor, and you will so find."

It is urged that the court erred in authorizing a recovery on both an express and implied contract. In the original petition an express contract was pleaded. In an amendment reliance was had on an implied contract. Both pleadings were controverted and no motion made to elect, hence upon the pleadings the court did not err in submitting both issues. However, there was no evidence of an express contract and in the instruction given an express contract was not defined. This was error. But the court did give a correct definition of an implied contract without in terms limiting it to either form of contract and as

it was applicable to the evidence introduced we do not think the jury could have been misled by the reference to an "express contract" as made in the instruction. It will be borne in mind that Mrs. Grief was running a boarding house and that it was not necessary for her to allege or prove an express contract for board or lodging. Also the relation of the parties to this case was such that a recovery may be had under an implied contract for non-personal services. In this view of the case, while technically erroneous, we do not think the instructions could have prejudiced the substantial rights of appellant.

Wherefore, the judgment is affirmed.