## Kellum v. Browning's Administrator et al.

(Decided October 29, 1929.)

JOHN E. SHEPARD for appellant.

LOUIS P. FRYER, HOYT B. BEST and SWINFORD & BARKER for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

Mrs. Lena Browning died in August, 1925, possessed of an estate of about $30,000. She bequeathed $3,000 to each of her four nieces and nephews, including the appellant, Mrs. Emma F. Kellum. A certain house and lot was devised to Georgetown College, at Georgetown, Ky., and the residue to the Baptist Church at Grayson, Ky. Mrs. Browning had no children, and her next of kin were Mrs. Kellum and other nieces and nephews, and her sisters, who resided at remote points.

Mrs. Kellum filed a claim with the administrator with the will annexed for $4,680 for nursing and care of the decedent and for furnishing her a room, fuel, laundry, etc., for a period of five years next preceding her death. This was allowed first by the administrator and then by the master commissioner, to whom the case was referred. The claimant filed a response to exceptions filed to the allowance, which was also denominated as an answer and cross-petition. It alleged an express contract to pay for the services, and stated that during all the time the claimant conducted a rooming and boarding house, furnishing accommodations for hire to those desiring them. The claim presented with this pleading covered a period of more than nine years and was on the basis of $25 a week, the aggregate being $12,000. She acknowledged payment of approximately $900.

Upon a trial before a jury on an issue out of chancery, at the close of evidence introduced in behalf of the claimant, the jury was peremptorily instructed to find for the estate. The court thereupon entered judgment sustaining the exceptions and denying the claim. From that judgment this appeal is prosecuted.

No election having been required as between the allegations of an implied and an express contract, the claimant had the right to rely upon both, or either con-

tract, as she might be able to sustain.  Dean's Ex'r v. Griffin, 217 Ky. 603, 290 S. W. 483.

So far as the claim for board is concerned, ever since the establishment of the commonwealth, and in Virginia before us as far back as 1663, the statutes have required an express contract for payment of compensation without regard to kinship.  The same rule was early adopted by the courts for nursing, and other personal services where the relationship was such as to raise the presumption of gratuity or mutuality of benefit.  The rule in this respect has been many times stated in substantially the same language.  In Lucius' Adm'r v. Owens, 198 Ky. 114, 248 S. W. 495, 496, it is thus given:

> "So it appears the doctrine is well established in this jurisdiction that, where the relation of the parties is sufficient to raise the presumption that they live together as a matter of mutual convenience, or as members of the same family, no presumption will be raised by the law that one member, though sick, has promised or agreed to pay the other members of the family, or any one of them, for services rendered to the sick person.  On the contrary, the presumption is that the services, being natural, were rendered without hope or expectation of pay, and before a recovery can be had an express contract must be proved; and to establish such a contract stricter proof is required than in a case of an ordinary contract.  This rule applies not only to cases between parent and child, but between uncles and aunts on the one side, and nephews and nieces on the other, and between cousins and other near relatives."

There was no evidence in this case tending to prove a contract arising from a definite offer and a definite acceptance, the claimant resting her case on evidence of conditions, circumstances, and statements of the deceased recipient of the services shown to have been rendered.  The court has before it, therefore, the duty of determining her right to a recovery, or rather her right to have had the case submitted to the jury, under such evidence.

There is a paucity of early cases of this character, which bears silent testimony to the traditional hospitality of Kentuckians.  But the scarcity is fully made up in re-

cent years, in which claims of this nature have been prolific of litigation. And while the principles of law have become pretty well established, there have crept into the opinions of the court what are apparently inharmonious and inconsistent expressions, but which are really but general statements or a confusion of terms. We have concluded, therefore, to review the law and consider the subject at some length in order to clarify the situation. Cases not involving the presumption of gratuity, however, are not included within the scope of the review.

The "Restatement of the Law of Contracts," by the American Law Institute, thus defines a contract (section 1):

"A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty."

We are not here concerned with a simple, formal promise and acceptance, clearly established from spoken or written words. And we pass for the present a consideration of contracts which arise by implication of law, that is, obligations created by law for reasons of equity and justice, which are generally denominated implied contracts, but which are more accurately designated as quasi contracts. Unlike true contracts, these are not based on the apparent intention of the parties to undertake the performance in question nor to promise anything. We are interested here in the law as it relates to a contract based on a promise which may be inferred from the conduct of the parties. As declared in section 5 of the Restatement above referred to, a promise in a contract may be inferred wholly or partly from such conduct as justifies the promisee in understanding that the promisor intended to make a promise. To constitute such a contract there must, of course, be a mutual assent by the parties —a meeting of minds—and also an intentional manifestation of such assent. Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S. W. 439. Such manifestation may consist wholly or partly of acts, other than written or spoken words. Section 21, "Restatement of Law of Contracts." Commenting on this declaration, that authority says:

"Words are not the only medium of expression. Conduct may often convey as clearly as words a

promise or an assent to a proposed promise, and where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed (1) in writing, (2) orally, (3) in acts, or (4) partly in one of these ways and partly in others.''

It is often difficult to determine whether the conduct of the parties as disclosed by the evidence is a manifestation of an agreement, promise, or understanding that (in this class of cases) compensation would be paid and accepted for services shown to have been rendered; that is to say, whether from the relation and operative acts of the parties the existence of a contract may logically and reasonably be inferred or implied. There is no difference in the legal effect of an express contract formally executed and of an inferred contract of this character, or, indeed, of a quasi contract. But there is a vast difference in the character and quantum of proof necessary to establish them. In establishing a contract by inference, the facts and circumstances must be sufficient to clearly and convincingly manifest or prove a mutual assent of minds to enter into the contract sought to be implied or established. In determining this sufficiency we frequently encounter conflicting presumptions. Thus, where one performs labor or services for another with his knowledge and assent and under circumstances which ordinarily call for payment, there is a presumption that the beneficiary intended payment and that there was an assent of minds as to this. On the other hand is the presumption of gratuitous service where there was a duty, moral obligation, or natural affection or mutuality of benefit (Nicely v. Howard, 195 Ky. 327, 242 S. W. 602), by reason of which it has been often declared there can be no recovery under an implied contract. However, when these conflicting presumptions do arise, the latter presumption of gratuity is considered the stronger and is conclusive unless overcome by affirmative proof that there was an express contract. And the degree of the relationship may strengthen or diminish the presumption according to its proximity or remoteness.

But in determining that there was an express contract between the parties, no formal execution or memor-

ial is necessary. In the development of the practice in this class of cases it was found that such a contract might be established, and the presumption of gratuity might be overcome, by proof that the services were actually rendered by the one party with the expectation of receiving compensation, and accepted by the other party with the intention to make compensation, although the amount was not agreed upon. The courts consistently and soundly reached the conclusion that compensation ought to be allowed under such circumstances; and, being confronted with the rule that it could not be allowed under an implied contract (more accurately a quasi contract), in their solicitude to do justice, they adopted the theory that such proof was sufficient to justify the implication of an agreement and to authorize recovery upon that covenant or express contract. This was no novelty or legal fiction, but was and is founded on reason and authority, as indicated in the references to the recent authentic Restatement of the Law of Contracts above cited.

Nearly a hundred years ago, Chief Justice Robertson, in Engleman's Ex'rs v. Engleman, 31 Ky. (1 Dana) 437 (which involved a claim of a son against his deceased father's estate for labor performed by himself and his slaves), declared, ''An express promise (to compensate the son) was not indispensable,'' and indicated it was proper to instruct the jury they had a right to infer a promise by the testator ''from all the circumstances''; holding, however, the facts were not sufficient for that purpose.

Thirty-seven years later, Judge Robertson, again writing for the court, in Thomas v. Arthur, 70 Ky. (7 Bush) 245, in effect held that a daughter could recover compensation of a deceased father's estate for clothing and nursing him on evidence tending to prove such service which would ''imply a contract not required by the statute to be express.'' But the opinion has been followed as authority only for allowing compensation for nonpersonal service, or for extraordinary and menial nursing.

In Weir v. Weir's Adm'r, 42 Ky. (3 B. Mon.) 645, 39 Am. Dec. 487 (decided in 1843), compensation was claimed by three nephews for services rendered their uncle in a manufacturing business. An award was refused because no express contract was relied on, and the

facts were not such as evidenced an implied contract. Says the opinion:

> "If a right to an allowance for services exists, it must rest only on an implied contract or promise to pay. It is said by one learned jurist, that an implied contract or promise is inferred from the conduct, situation or mutual relations of the parties, and is enforced by the law on the ground of justice. And this language is used by Chief Justice Marshall, in Ogden v. Saunders, 12 Wheat, 341 (6 L. Ed. 606), 'A great mass of human transactions depends upon implied contracts; upon contracts which are not written, but which grow out of the acts of the parties. In such cases, the parties are supposed to have made those stipulations which, as honest, fair and just men, they ought to have made.' And Lord Mansfield says, that when *ex equo* and *bono* money is due, though there be no express promise to pay, the law will imply a promise."

Although it was shown the nephews had faithfully served their uncle, there had been reciprocal benefits and their services had helped to build up the estate, the major portion of which they inherited; so the court held:

> "From the conduct, situation and mutual relations of the parties, so far from its being founded in justice, to allow compensation, it would operate the height of injustice; and so far from the stipulations for payment which is sought to be implied, being such as honest, fair and just men ought to have made, they are precisely such as honest, fair and just men, under the circumstances of this case, would not have thought of exacting on the one side, or have thought of making on the other."

Passing without review the many cases in which this idea was developed and applied, we come to Oliver v. Gardner, 192 Ky. 89, 232 S. W. 418, 420, in which the rule is restated with elaboration and its permanency in our jurisprudence noted, with many supporting authorities. It is sufficient here to say that in determining the existence of a contract in the manner indicated, the court has consistently held that the evidence must disclose a purpose on the part of the promisor to assume a legal obligation capable of being enforced against him. Montgomery v. Miller, 43 Ky. (4 B. Mon.) 470; Price v. Price's

Ex'r, 101 Ky. 28, 39 S. W. 429, 19 Ky. Law Rep. 211. In the latter case it is said that the relation of the parties must be shown to have been or to be that of debtor and creditor, or of master and servant; that no man is to be made a debtor without his knowledge or assent or under circumstances where he had no reason to expect that such is his position or liability. To establish in the manner under consideration this attitude of strangers in duty, or the relation of debtor and creditor, requires stricter proof, as stated, than to establish ordinary contracts— more than proof of performance of the services and casual, indefinite expressions of intention to pay for same, or acknowledgment of gratitude or dependence on the part of the recipient, or expressions of a wish or desire that the server or attendant should be compensated, for cases of this character are pregnant with danger of spoliation. But it may be observed that the degree of proof required ought to be diminished as the natural duties and obligations are lessened according to the ordinary and common understanding of men. In weighing the evidence, however, as stated in Oliver v. Gardner; supra:

". . . It is not essential that the proof should show a formal categorical promise by the one sought to be charged in order to create the 'express contract' upon which a recovery will be allowed, since, in the language of this court in the Reynolds case, 'any facts that would constitute, or are equivalent to, such an agreement,' will be sufficient to establish an express contract; and in the Turner case it was said: 'In such cases there must be proof either of an express contract to pay or of such facts and circumstances as fairly show that both the party rendering the service and the one receiving it expected and understood that compensation would be made.' "

In the later case of De Fevers' Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976, in which the facts were sufficient to warrant the inference of an express contract, substantially the same language is used, and a full statement of the rule respecting personal services rendered by near relatives is given.

However, a contract established in this manner has, as suggested, sometimes been referred to in opinions of this court as an "implied contract" and recovery authorized thereunder. This may cause some confusion. See

Hamilton v. Preston, 166 Ky. 61, 178 S. W. 1146; Bishop v. Newman's Ex'r, 168 Ky. 238, 182 S. W. 165; Farley v. Stacey, 177 Ky. 109, 197 S. W. 636, 1 A. L. R. 1181; Clark, Adm'r v. Hale, 209 Ky. 496, 273 S. W. 39; and Dean's Ex'r v. Griffin, 217 Ky. 603, 290 S. W. 483. The reference or expression is simply a choice of designation without distinguishment, for "implied contracts" may be either implied in law or in fact.

Although not hitherto so denominated by this court, what we have been considering is often called a "contract implied in fact." It requires an actual agreement or meeting of minds although not expressed. It is implied or presumed from acts or circumstances which, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract is shown. 6 R. C. L. 587. In this class of cases, death has silenced the voice of one of the parties to the transaction, and the law seals the lips of the other. But as guilt of crime may be established by proof of circumstances, and a tort be inferred from conditions, so may the existence of an agreement or contract, as we have shown, be deduced from proven facts. Thus it is said in Peters v. Poro, 96 Vt. 95, 117 A. 244, 246, 25 A. L. R. 615:

> "The terms 'express contract' and 'contract implied in fact' indicate a difference only in the mode of proof. A contract implied in fact is implied only in that it is to be inferred from the circumstances, the conduct, acts, or relation of the parties, rather than from their spoken words."

In other words, from the facts disclosed the court concludes that the parties themselves had entered into an agreement respecting them, although there is no evidence of an express offer and a definite acceptance.

The term "contract implied in law" is applied to a class of obligations created by law without regard to the assent of the parties upon whom the obligation is imposed—one which is not a contract obligation in the true sense, but a quasi contract, constructively imported by law, as where one has received money or its equivalent under such circumstances that in equity and in good conscience he ought not to retain it, in which case the owner may recover in an action in form ex contractu.

People v. Dummer, 274 Ill. 637, 113 N. E. 934. As stated in 6 R. C. L. 588:

"The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. The intention of the parties in such case is entirely disregarded, while in cases of express contracts and contracts implied in fact the intention is of the essence of the transaction. As has been well said, in the case of consensual contracts the agreement defines the duty, while in the case of quasi-contracts the duty defines the contract. The duty which thus forms the foundation of a quasi-contractual obligation is frequently based on the doctrine of unjust enrichment."

Or, as expressed in Marcum v. Terry, 146 Ky. 145, 142 S. W. 209, 210, 37 L. R. A. (N. S.) 885, "The law implies a promise where the party ought to promise." So, where the presumption of gratuity either by reason of the statute or the judicial rule does not apply, the law will import an implied and enforceable contract to take the place of the omitted express contract and impose the obligation to compensate for services rendered by one not bound to render them.

In construing and applying the Hospitality Act (section 2178, Ky. Stats.), which is a statutory mandate that no recovery for board must be allowed to one "not making an agreement for compensation therefor," no particular form of agreement or contract has ever been required; it being sufficient if the evidence showed what we have termed a "contract implied in fact." Henderson v. Stringer, 32 Ky. (2 Dana) 291; Evans' Adm'r v. McVey, 172 Ky. 1, 188 S. W. 1075, and cases cited.

The court has had presented to it many cases in which the existence or nonexistence of a contract from facts proven was determined, and recovery allowed or refused under a contract implied in fact.

The cases in which the evidence was held sufficient to authorize a recovery are here collated, namely: Walker v. Ganote (Ky.) 116 S. W. 689; Barnett's Adm'r v. Adams, 82 S. W. 406, 26 Ky. Law Rep. 622; Miller v. Swan, etc., 91 Ky. 36, 14 S. W. 964, 12 Ky. Law Rep. 629; Taber v. McGregor, etc., 192 Ky. 600, 234 S. W. 194; Jones v. Jones, etc., 210 Ky. 38, 275 S. W. 7, 9; De Fevers' Ex'r v. Brooks, etc., 203 Ky. 606, 262 S. W. 976; Hamilton, etc., v. Preston, etc., 166 Ky. 61, 178 S. W.

1146; Humble, etc., v. Humble, etc., 152 Ky. 160, 153 S. W. 249; Benge's Adm'r v. Fouts, 174 Ky. 654, 192 S. W. 703; Dawson, etc., v. Smith, etc., 197 Ky. 343, 247 S. W. 19; Bean's Adm'r v. Bean, 216 Ky. 95, 287 S. W. 239; Marshall v. Ireland, 228 Ky. 354, 15 S. W. (2d) 289.

The cases in which the evidence was held not sufficient to show the existence of an agreement are these: Engleman's Ex'rs v. Engleman, 31 Ky. (1 Dana) 437; Turner's Adm'r v. Turner, 38 S. W. 506, 18 Ky. Law Rep. 822; Dance's Adm'r v. Magruder, 80 S. W. 1120, 26 Ky. Law Rep. 220; Durr v. Durr, 82 S. W. 581, 26 Ky. Law Rep. 855; Sutherland v. Sutherland's Ex'rs, 142 Ky. 688, 134 S. W. 1152; Wallace v. Denny's Adm'r, 90 S. W. 1046, 28 Ky. Law Rep, 978; Dowell v. Dowell's Adm'r, 137 Ky. 167, 125 S. W. 283, 284; Reynolds' Adm'r v. Reynolds, 92 Ky. 562, 18 S. W. 517, 13 Ky. Law Rep. 793; Galloway's Adm'r v. Galloway, 70 S. W. 48, 24 Ky. Law Rep. 857; Frailey's Adm'r v. Thompson, 49 S. W. 13, 20 Ky. Law Rep. 1179; Wayman, etc., v. Wayman, 22 S. W. 557, 15 Ky. Law Rep. 374; Terry v. Warder, 78 S. W. 154, 25 Ky. Law Rep. 1486; Conway, etc., v. Conway, etc., 130 Ky. 218, 113 S. W. 94; Foley v. Dillon, 105 S. W. 461, 32 Ky. Law Rep. 222; Baugh v. Baugh's Adm'r, 139 Ky. 830, 109 S. W. 345 33 Ky. Law Rep. 148; Newton's Ex'r v. Field, 98 Ky. 192, 32 S. W. 623, 17 Ky. Law Rep. 769; Gross v. Newman's Adm'r, 50 S. W. 530, 20 Ky. Law Rep. 1910; Motley, etc., v. Motley, 205 Ky. 460, 266 S. W. 11; Bolling, etc., v. Bolling's Adm'r 146 Ky. 313, 142 S. W. 387, Ann. Cas. 1913C, 306; Ballard v. Ballard, 177 Ky. 253, 197 S. W. 661; Armstrong's Adm'r v. Shannon, 177 Ky. 547, 197 S. W. 950; Bishop v. Newman's Ex'r, 168 Ky. 238, 182 S. W. 165; Austin, etc., v. Sellars' Adm'r, 202 Ky. 742, 261 S. W. 248; Jeffries' Ex'r v. Ferree, 175 Ky. 18, 193 S. W. 646; Mitchell v. Mitchell, etc., 204 Ky. 745, 265 S. W. 301; Lucius' Adm'r v. Owens, 198 Ky. 114, 248 S. W. 495; McWhorter v. Pittman's Adm'r, 196 Ky. 618, 245 S. W. 133; Gruelle's Adm'r v. Houchen, 216 Ky. 369, 287 S. W. 919; Murphy's Ex'r v. Bryan, 230 Ky. 244, 18 S. W. (2d) 978.

An exception to the general rule requiring a contract, either express or implied in fact, is made when the beneficiary of the services was incapable of entering into an agreement. Combs v. Beatty, 3 Bush, 614; Dance's Adm'r v. Magruder, 80 S. W. 1120, 26 Ky. Law Rep.

220; Wayman v. Wayman, 22 S. W. 557, 15 Ky. Law Rep. 374; Jeffries' Ex'r v. Ferree, 175 Ky. 18, 193 S. W. 646.

It is also held that a recovery may be had by a near relative on a contract implied in law where the services were not personal to the decedent, such as washing or mending or making clothes, and other similar nonpersonal services, exclusive of board and nursing. Frailey's Adm'r v. Thompson, 49 S. W. 13, 20 Ky. Law Rep. 1179; Dance's Adm'r v. Magruder, 80 S. W. 1120, 26 Ky. Law Rep. 220; De Fevers' Ex'r v. Brooks, supra. Although in Green's Ex'r v. Green, 119 Ky. 103, 82 S W. 1011, 26 Ky. Law Rep. 1007, the judgment was reversed because the instructions permitted a recovery on a contract implied in law for services which included the care of the farm and stock of an aged and helpless uncle, that service being considered as of the same nature as nursing and caring for him. The opinion to that extent being out of harmony with other decisions of the court should not be considered authoritative.

Compensation may also be recovered by one in the class under consideration under a contract implied in law for services of an extraordinary and menial nature not regarded as household work appertaining to the domestic duties, and which cover an extended period of time. Frailey's Adm'r v. Thompson, supra; Durr v. Durr, 82 S. W. 581, 26 Ky. Law Rep. 855; Mark's Adm'r v. Boardman, 89 S. W. 481, 28 Ky. Law Rep. 455, 1 L. R. A. (N. S.) 819; Allen, etc., v. Smith, etc., 208 Ky. 207, 270 S. W. 782 (in which a definition of extraordinary services is given); and Clark, Adm'r v. Hale, 209 Ky. 496, 273 S. W. 39.

Coming now to consider the facts in the case before the court and to a determination of the right of appellant to recover compensation under the uncontradicted evidence, or rather to have the question submitted to the jury. It was proved that shortly after the death of her husband in 1916, the deceased, Mrs. Browning, came to appellant's home in Falmouth and remained there continuously until her death nine years later, with the exception of a few weeks now and then when she would return to her own house, about a half mile distant, in which she had retained a room. When there Mrs. Kellum went every day, and sometimes oftener, to look after her aunt's wants and to care for her, even though at the time Mrs. Browning had a servant employed. During her ab-

sence from Mrs. Kellum's, it was shown that Mrs. Browning objected to having her room occupied by any one else, and that it was retained for her. During all the time the appellant was conducting a rooming and boarding house. After occupying an upstairs room for awhile when she first came, it was testified that the best room in the house was turned over to Mrs. Browning and a door was cut directly into the dining room for her convenience. She was crippled and partially paraylzed, necessitating the use of crutches, and oftentimes ill and bedridden, requiring much attention. Her room was attended to, fires kept burning when needed, and there were performed by Mrs. Kellum all kinds of menial services, such as are required by an old, crippled lady confined to her room. On occasions she would take her aunt out in a wheel chair. She was critical of the food and in all things rather exacting in her demands.

Mrs. Browning's physician testified the character of attention given by Mrs. Kellum as a nurse was of the reasonable value of $15 to $20 a week. The reasonable worth of the board and lodging was also proven. Numerous checks for different small sums, and given at irregular times and marked as being for board, were offered in evidence by the claimant. For the year 1916 these aggregated $35. There was none for 1917, and the total for each year was anywhere from $35 to a maximum of $266 in 1923. It was explained that during the early part of the period Mrs. Browning owned a farm and her tobacco crop was pledged, so that her ready income and cash were limited. Another niece stayed with her in her own house awhile in 1923, and Mrs. Browning gave her a check for $50 bearing the notation, "for staying with me and making garden."

While there was no evidence introduced showing a "categorical promise by the recipient to pay for and a like agreement by the performer to render the services upon that promise," and no verbal expression on the part of the decedent except to the effect that she was paying her way, the conduct and the respective situations of the parties (financial and otherwise), the exacting demands of the aunt, the degree of kinship, and the significant indication of the intention of the parties as evidenced by payments for board from time to time (see Dawson v. Smith, supra; Jones v. Jones, supra), all taken together were sufficient, we think, to take the case to the jury on both the claim for board and nursing on

the theory of a contract implied in fact, that is to say, on the issue as to the existence of an express contract. Many of the cases herein cited authorize this conclusion. Those particularly applicable are McGrew's Ex'r v. O'Donnell, 92 S. W. 301, 28 Ky. Law Rep. 1366; Durr v. Durr; Bean's Adm'r v. Bean; and Clark, Adm'r. v. Hale. The last case is especially analogous.

If the evidence is the same on another trial, and there is no election to rely on a contract implied in law, an instruction should be given patterned after those in Galloway's Adm'r v. Galloway, 70 S. W. 48, 24 Ky. Law Rep. 857, and as approved in Dean's Ex'r v. Griffin, supra.

The pleadings and facts of the instant case also make applicable the law of quasi contracts, or contracts implied in law. The evidence showed the claimant here was conducting a boarding or lodging house, and engaged in the business of supplying for pay those accommodations which the aunt accepted. The general rule which denies a recovery on a contract implied in law ought not to be applied where the claim arises out of commercial relationships. There is no more reason for concluding or presuming that the niece rendered these services gratuitously, or by reason of her affection, or in recognition of a moral obligation, than there would be had she been conducting a mercantile establishment and her aunt during the years had obtained her clothing and food in her store. The facts do not bring the case within that class where the presumption of gratuity is raised by reason of mutual convenience or benefits, for the benefit all inured to Mrs. Browning. Dawson v. Smith, supra.

Furthermore, the general rule denying recovery on a contract implied in law because of the presumption arising from kinship or the family relation is specifically modified by the Hospitality Act where the facts of the case bring it within the terms of that statute. It is provided in Ky. Stats., sec. 2178:

"Any person other than the keeper of a tavern or house of private entertainment, who shall entertain in his house another, or furnish him with diet or storage for his goods, not making an agreement for compensation therefor, shall not recover anything against the person so entertained or furnished with diet or storage, or against his estate, but the person so furnishing another shall be considered as doing the same of courtesy."

Mrs. Kellum, under the evidence, came within the term "keeper of a house of private entertainment," which Ky. Stats., sec. 2179 declares to be: "Any person not a tavern keeper, who shall furnish for compensation lodging, or diet to travelers, or to one boarding in his house," etc.

The converse of this statutory inhibition must logically follow, namely, that a keeper of a tavern or house of private entertainment *may recover* compensation for board of those entertained by him in his establishment *without* "making an agreement therefor." Dean's Ex'r v. Griffin, supra.

Moreover, as a part of the hospitality statute, it is provided in Ky. Stats., sec. 2179a1, that boarding house keepers and keepers of a house of private entertainment shall have a lien on the personal property of the "person receiving the board, nursing, care or attention from such landlord, for the contract price of such board, care and attention as are received, and in case of no contract price for such board, nursing, care or attention, then for a reasonable price for same."

Since the statute gives a lien to secure compensation for nursing and care of one residing in a boarding house even though there be no stipulated sum agreed upon, it necessarily follows that the statute intended to and does give the keeper of a boarding house the right to recover for such services without a previous agreement. It must therefore be construed as destroying the presumption of gratuity and modifying the general rule where the relation of landlord and boarder or of innkeeper and guest exists.

Our conclusion in the case is this: That in the absence of an election, the case should have been submitted to the jury as to the right of recovery for both board and nursing under a contract implied in fact, as stated, and also under a contract implied in law.

There was an issue raised by the pleadings as to whether or not Mrs. Kellum during all the time was conducting a rooming and boarding house. If both affirmative and negative evidence should be introduced, that issue should of course be submitted to the jury also, and no recovery be authorized on a contract implied in law unless the jury believe she was engaged in such business.

The administrator may, of course, show if he can that all the services were rendered by the claimant gratuitously and without any purpose to charge for them. As

to proving the rendition of service and establishing the express contract to compensate therefor, the burden is on the claimant. As to the contract implied in law, the burden is on the administrator to show compensation was not contemplated.

The five-year statute of limitations was invoked, and the introduction of evidence was limited accordingly. Appellant insists that the payments shown to have been made on account of board from time to time gave her the right to recover for the entire period of nine years, less the payments. Section 2515, Ky. Stats., provides that an action on a contract not in writing shall commence within five years from the date a cause of action accrues, which is, where there is a right to institute and maintain a suit. City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542; Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187. This statute was construed in its relation to a claim of this character in Bryson's Adm'r v. Briggs, 104 S. W. 982, 32 Ky. Law Rep. 159, and it was held that each year's support constituted a separate cause of action; that the claimant had the right to sue at the end of each year to recover payment; that when suit was not brought within five years from the end of any annual period the statute was an effective bar to its maintenance. This does not apply, however, when reliance is had on a promise to pay by a testamentary bequest. Benge's Adm'r v. Fouts, supra.

The trial court, therefore, properly confined the evidence and should limit the recovery to a period of five years. The payments made from time to time should be credited on the account for the respective years in which they were made. They cannot be considered as taking the claim out of the statute of limitations.

The appellees argue that the claimant should be required to prove that there had been no payment for services rendered; and, also, that the introduction of the checks referred to was sufficient to show payment in full. One of the grounds of exception to the allowance of the claim was that it had been paid. That is a plea of payment, and the burden rested upon the defendants to prove payment. Whitteker v. Holcomb, 177 Ky. 790, 198 S. W. 533. See also Newton's Ex'r v. Field, 98 Ky. 186, 32 S. W. 623, 17 Ky. Law Rep. 769; and McGrew's Ex'r v. Congleton, 139 Ky. 515, 102 S. W. 1185, 31 Ky. Law Rep. 609. In this respect the case is not unlike Jones v. Jones, supra. Concerning checks given for board, we

said: "Likewise the evidence for defendant on the issue of payment was inconclusive, but did disclose a state of case which would have justified the jury in reaching the conclusion that the claim had been paid."

The judgment of the lower court is reversed for proceedings consistent with this opinion.

Whole court sitting.