## Crocker v. Crocker et al.

(Decided Oct. 7, 1932.)

BEN S. ADAMS for appellant.
L. B. ALEXANDER for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Appellant, Robert Crocker, and appellee, Bessie Crocker, were married in 1904. They separated in 1908, and appellant later obtained a divorce and custody of their two children, John F. Crocker and Jesse Crocker. Appellant again married, and has eight children by the second marriage.

In 1922 the Prudential Insurance Company of America issued to John F. Crocker a policy of insurance whereby it insured his life in the sum of $230, and in 1925 it issued him a policy for $416. Each policy provided that its proceeds should be paid to the insured's executor or administrator, unless payment should be made under the facility of payment clause, which provided that the insurer might make payment to any relative by blood or connection by marriage of the insured or to any person appearing to the company to be equitably entitled to the proceeds of the policy by reason of having incurred expense on behalf of the insured for his burial. In 1928 the insurance company promulgated a rule that holders of policies similar to the policies issued to John F. Crocker should be entitled to double indemnity in case of death by accident.

John F. Crocker was accidentally killed on September 15, 1930, by coming in contact with an electric wire, the property of the Kentucky Utilities Company, and on the following day the insurance company paid to appellant $1,322.36. Appellant thereafter qualified as administrator of his son's estate, and collected $3,000 from the Kentucky Utilities Company in settlement of all claims for his son's death. Out of the sum paid to him by the insurance company he paid the burial expenses amounting to $228 and to the coroner $12. He failed to pay the balance to himself as administrator, and on January 20, 1931, the appellee Bessie Crocker brought this action for the use and benefit of her deceased son's estate to require Robert Crocker to account for the sum paid to him by the insurance company. She alleged in her petition that John F. Crocker died intestate, and that she and Robert Crocker, the deceased's mother and father respectively, were his only heirs at law, and that she was entitled to one-half of his estate.

Appellant's defenses presented in an answer and an amended answer were: (1) That he obtained title to the proceeds of the insurance policies of the insured

when they were paid to him under the facility of payment clause; and (2) that the estate of John F. Crocker was indebted to him for the funeral bill of $228, a coroner's fee of $12, the premiums on the policies which had been paid by him, and for board and lodging for 4½ years at $7 a week, which the deceased had agreed to pay after he reached the age of 21 years.

A trial was had, and at the conclusion of all the evidence the court instructed the jury to find for the plaintiff in the sum of $1,060.76, being the amount sued for, less $228 funeral bill, $12 coroner's fee, and $21.60 premiums on policies, the amount paid by the defendant. It was adjudged that the estate of John F. Crocker, deceased, recover of Robert Crocker the sum of $1,060.76, and from that judgment Robert Crocker has appealed.

On motion of the plaintiff, her attorney, L. B. Alexander, was allowed $150 for his services, and he was adjudged a lien on the funds in appellant's hands. He has been made a party to this appeal, and this court is asked to reverse the judgment making the allowance to him.

Appellant cites Jones' Administrator v. Prudential Life Insurance Company of America, 225 Ky. 238, 8 S. W. (2d) 412, in support of his contention that he acquired title to the fund when the insurance company elected to pay the insurance to him under the facility of payment clause. That case involved a controversy between a claimant and the insurance company where the insurance company had made payment to the wife of the insured, and it was held that, under the facts presented, the company was protected. The chief purpose of the facility of payment clause is for the convenience and protection of the insurer. Such payment to one appointed to receive it does not change the beneficial interest in the fund. Appellant was a member of the class of persons to whom the insurance company was authorized to make payment under the facility of payment clause, but payment to him only made him the agent for those legally entitled to the fund. As was said in Metropolitan Life Insurance Company v. Hightower, 211 Ky. 36, 276 S. W. 1063, 1065, 44 A. L. R. 1158:

"The fact that he was a member of the class to whom payment might be made at the option of

the insurer did not enlarge his rights, but only permitted payment to be made to him in a representative capacity."

Considerable evidence bearing on the issue as to the existence of a contract between appellant and his deceased son whereby the latter agreed to pay the former for his board and lodging was introduced. The trial court was of the opinion that appellant failed to produce sufficient evidence tending to show the existence of such a contract to authorize a submission of that question to the jury, and peremptorily instructed the jury to find against him. Where a child more than 21 years of age lives with his or her parent or parents, the presumption is that they live together as a matter of mutual convenience, and that services rendered one to the other are gratuitous. This presumption may be overcome by evidence showing the existence of a contract between the parties for payment for the services, but, as has been said in numerous cases, to establish such a contract stricter proof is required than in a case of an ordinary contract.

The law governing the right of one to recover for services rendered to another, where the relation of the parties is such as to raise the presumption of gratuity, was elaborately reviewed in the recent case of Kellum v. Browning's Administrator, 231 Ky. 308, 21 S. W. (2d) 459, where numerous authorities are collated. It was held in that case that the agreement of the beneficiary to pay for services rendered to him by another might be established and presumption of gratuity overcome by proof that the services were actually rendered by one party with expectation of receiving compensation and accepted by the other party to the contract with intention to pay, though the amount was not agreed upon.

Briefly stated, the facts having a bearing on the existence of a contract between the appellant and his deceased son are these: John F. Crocker after 1916 lived with his grandmother and appellant's mother, Mrs. Alma Kreutzer, who conducted a boarding house in Paducah. In 1926 or 1927 appellant and his family moved into his mother's home. John F. Crocker continued to live there until his grandmother's death in April, 1929, and thereafter with his father. There is some evidence that Alma Kreutzer was an invalid dur-

ing the last few years of her life and unable to look after her affairs, and that appellant moved into her home for the purpose of taking care of her and conducting the boarding house, and that he paid the expenses incident to its operation.

Jesse Crocker, a brother of John F. Crocker, testified that on a number of occasions just after his brother became 21 years old he heard conversations between his father and the decedent in which the appellant demanded that the decedent should pay for his board, and the latter agreed that he would. On one occasion he heard appellant say to decedent, "Johnny, you're 21 years old. I have got a large family to support and you will have to pay board," and decedent said, "All right." Ethel McDonald, a servant in the home for a number of years, and Mrs. Benny Price, a boarder, testified that they heard similar conversations between appellant and his son. There was some proof of an express contract, and, taken as a whole, the proven facts and circumstances were such that the jury might infer that both the appellant and his son expected and understood that compensation would be made. There was a dispute in the evidence whether prior to Alma Kreutzer's death the board and lodging was furnished to John F. Crocker by her or by the appellant, but that was a question for the determination of the jury. We think there was sufficient evidence to authorize a submission of the case to the jury, and that the court erred in sustaining appellee's motion for a peremptory instruction.

The appeal as to L. B. Alexander involves less than $200, and as to him the appeal must be dismissed for lack of jurisdiction.

The judgment as to Bessie Crocker is reversed for further proceedings consistent herewith, and as to L. B. Alexander the appeal is dismissed.