**STAPLES' EXECUTOR v. BARRETT et al.**

Court of Appeals of Kentucky.

Oct. 19, 1951.

Terry L. Hatchett, J. R. White and E. H. Smith, all of Glasgow, for appellant.

Wilson & Wilson, Glasgow, for appellee.

MOREMEN, Justice.

Appellees, Nettie Barrett, and Elgin Barrett, filed an action against appellant, B. L. Jackman, executor of the estate of Charles M. Staples, deceased, in which it was averred that appellees had furnished to Staples, during his lifetime at his special instance and request, board, lodging, meals, clothing, care and services (a portion of which were menial during his last sickness) for a period of years before his death, and that decedent had promised to pay for them, but at the time of his death no part of the account had been paid. Upon the trial of the cause, a jury returned a verdict in the

amount of $4500, and from a judgment entered thereon, this appeal was prosecuted.

In the serious year of 1930, Charles Staples owned and lived on a 22 acre farm. In addition he owned a 200 acre farm in the same county. In that year, appellees, then a young married couple, came to live with him and remained with him until his death on March 26, 1949. At the time of his death, Staples was 86 years old and appellee, Elgin Barrett, was about 39 years of age. During the 19 year period, Staples and the Barretts lived together as one family. The record discloses a picture of convenient unity.

There is proof to the effect that during the early years of their association, the Barretts and Staples worked together on the farm and discharged reciprocal family duties as though they were, in fact, closely bound by ties of blood. The farms owned by Staples were operated under a partnership arrangement, the exact terms of which may not be clearly determined from the evidence. Barrett also leased other land from which he earned money for the support of his family which was enlarged, during the course of years, by the birth of three children.

The proof concerning the family relationship and the nature of services rendered Staples was confined almost entirely to a description of the last five years of the association because the statute of limitations was involved. We do not have a complete picture of the entire association, but here is the way it was during the five-year period. Staples was not strong. He dressed every day; moved about the house and yard; occasionally went to town; transacted some business dealings, and was engaged generally in those limited activities indulged in by persons of similar age. The behavior of the Barretts was exemplary. They administered to the needs of decedent in a manner we like to believe all children do unto their aging parents under similar conditions. Decedent ate with the family; Mrs. Barrett washed his clothes; and there is proof that they purchased groceries at neighborhood stores; but the proof is not clear as to whether or not they paid for the groceries with their money. The bare fact that they bought groceries was shown. Staples was sick occasionally, but suffered only from minor disabilities until the advent of his last one. During this illness, and perhaps one time before, he suffered from attacks of diarrhea accompanied with loss of functional control. Appellees kept him clean and in such good condition that the attending physician testified that he did not remove him to the hospital because he was well satisfied with the care given him at his home.

There are indications in the record that decedent was well satisfied with his family arrangement and grateful for the treatment he had received. Several witnesses testified that he expressed the intention of repaying the persons who had taken care of him. It is clear that he had this thought in mind, as far back as September 25, 1943, when he executed a will which contained this clause: "But there is excepted out of my estate and not to be included in the above bequest the twenty-two acres of land on which I live. This twenty-two acres of land I will and bequeath to my friends who have lived with me and taken care of me, namely, Elgin Barrett, Nettie Barrett, and Ella Watha Barrett, they to share and share alike in this land."

This devise was revoked by a codicil executed on January 23, 1947, and his act of revocation may be interpreted and understood only when it is considered with facts resulting from another action taken by him on that day, when he simultaneously conveyed to Elgin Barrett a one-half interest in his 200 acre farm, by a deed which declared the consideration to be "one dollar ($1.00) cash in hand paid and the receipt of which is hereby acknowledged and other good and valuable considerations."

Although many witnesses were introduced who testified at length and a number of documents were presented as proof, the evidence concerning the vital issue of whether decedent had contracted for the services allegedly rendered, is fragmentary because one party was dead and the other parties were denied the right to testify by Sec. 606 of the Civil Code of Practice.

This situation is not novel and it has given rise to a great volume of decisions.

The appellant contends that the trial court peremptorily should have instructed the jury to find for him because an express contract was alleged in the petition and no evidence was introduced to support it. In reply to this contention, appellee states that where no election is required as to whether the contract was implied or express, the claimant has a right to rely on both, and quotes in support from the case of Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W. 2d 459, 462, this statement: "No election having been required as between the allegations of an implied and an express contract, the claimant had the right to rely upon both, or either contract, as she might be able to sustain. Dean's Ex'r v. Griffin, 217 Ky. 603, 290 S.W. 483."

The foregoing rule is sound, but the fact that the record does not contain any evidence to support an express contract does not relieve claimant from the duty to disclose facts, if recovery is to be had, by which the implication of law may create a contract between the parties. When formal, explicit words are lacking, in some instances, a contract may be inferred from the facts. The explicit fact must be substituted for the formal word in the establishment of the contract, and the agreement thus reached attains the solemnity of an express contract; the only difference between them exists in the object towards which the proof is directed. In one case an attempt is made to establish the *words* of offer and acceptance (which may be either parol or written), in the other the purpose of the evidence is to show that the *acts* of the parties made a complete contract, and "the law implies a promise where the parties ought to promise." However, cases involving questions of the type here presented are not subject to the application of such a simple rule, because even though we have permitted recovery upon a contract implied in fact, we have hedged the rule with many limitations.

In the consideration of this case it must be borne in mind that the claimants are not near relatives of the deceased. This fact removes from the case many troublesome features which are presented in most actions of this nature where the various degrees of consanguinity are also facts which must be graded and appraised in connection with those from which the contract is sought to be implied.

One limitation to the general rule is stated in the opinion in the case of Turner v. Young's Ex'r, 155 Ky. 604, 159 S.W. 1165, 1166, wherein it was written: "In a long line of cases this court has held that, where the relationship of the parties is such as to raise the presumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for services rendered by one to the other. On the contrary, an express contract must be proved, and to establish such a contract stricter proof is required than in the case of an ordinary contract. (Many cases were cited.) But counsel for Mrs. Turner insists that her case falls within the rule laid down in Humble et al. v. Humble et al., 152 Ky. 160, 153 S.W. 249. That case does not modify the rule announced in the foregoing cases except to the extent of holding that stricter proof of an express contract will not be required in a case of extraordinary and menial services covering a long period of years."

In the case at bar no attempt was made to establish an express contract by strict proof or any proof of *words* conveying an offer and an acceptance. The purpose of the evidence was to show that the *acts* of the parties were such that a contract might be implied from them. Under the authority of the Turner case such a contract must be express, and, when claimants failed to establish that kind of contract, a verdict should have been directed in behalf of appellant.

In view of our conclusion, it is unnecessary to discuss other assignments of error made by appellant. The judgment is therefore reversed and remanded for further proceedings not inconsistent with this opinion.