Lancaster's Exor. v. O'Brien.

CASE 70.—PROCEEDING FOR THE SETTLEMENT OF THE ES-
TATE OF S. P. LANCASTER IN WHICH CHARLES
P. O'BRIEN FILED A CLAIM.—February 4, 1910.

## Lancaster's Exor v. O'Brien

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From a judgment allowing the claim of O'Brien,
Lancasters' Exor. appeals.—Affirmed.

1.  Executors and Administrators—Allowance and Payment of
    Claims—Services Rendered Decedent—Evidence.—Under Ky.
    St. Sec. 3870 (Russell's St. Sec. 3901), providing that if a
    demand against the estate of a decedent be other than an ob-
    ligation signed by him, or a judgment, it shall be verified by
    a person other than the claimant, who shall state in his af-
    fidavit that he believes the claim to be just and correct and
    gives his reasons why he so believes, a claim against an
    estate for services performed at irregular times during sev-
    eral years, so that it was difficult to specify what they were
    or when they were performed, was sufficiently supported by
    affidavits stating that the persons making them knew that
    the claimant performed services for decedent, that they be-
    lieve his claim was just and correct, giving their reasons,
    when there was ample evidence that the claimant did perform
    services for the decedent for which he had not been paid, and
    for which the decedent intended to pay him, since the claim
    was of such a nature that no one could positively swear that
    he knew various items were just and correct.
2.  Executors and Administrators—Allowance and Payment of
    Claims—Amount of Claim.—In a proceeding for the allowance
    of a claim against the estate of a decedent for services ren-
    dered, held, under the evidence, that the amount allowed the
    claimant was not excessive.

NAT W. HALSTEAD, McQUOWN & BECKHAM, JOHN · D.
WICKLIFF and MORGAN YEWELL for appellant.

JOHN A. FULTON and F. E. DAUGHERTY for appellee.

Opinion of the Court by Judge Carroll—Affirming.

S. P. Lancaster died in May, 1902. After his death a suit was brought to settle his estate, and the appellee presented a claim against his estate for $2,322.90. To the commissioner's report allowing this claim, exceptions were filed, and upon final hearing the chancellor allowed appellee $1,546.80. From that judgment this appeal is prosecuted; the contention of appellant being that appellee was not entitled to recover anything. The verified claim presented by appellee is as follows: "To labor and services rendered and performed by the claimant herein to Sam P. Lancaster, deceased, during his lifetime, and continuously from the 3d day of April, 1899, to May 8th, 1902, a period of 3 years, 1 month, and 5 days, all at the request of said Lancaster, and under an agreement or promise on his part to pay a reasonable compensation therefor; such services so rendered and perfomed were of the character of a general supervision and management of the business affairs of said Lancaster, keeping his books and accounts, and in a general way attending to, supervising and managing his business, and reasonably of the value of $750 per annum, aggregating the amount now due and owing—$2,322.90." This claim is supported by the affidavits of John C. Tolbott, who says, "That he believes the foregoing account of Charles P. O'Brien for $2,322.90 against the estate of S. P. Lancaster is just and correct, for the reason that he knows S. P. Lancaster was a man of large affairs and estate, and that the claimant, Charles P. O'Brien, during the period set out in said claim was engaged in looking after and attending to the affairs

and business of said Lancaster, and that said Lancaster was in frequent consultation with the claimant, and said Lancaster seemed to rely on said claimant in the transaction of his business, and these matters and facts he learned in a large part from said Lancaster himself;'' of C. C. Brown, who said, ''That he knows that the claimant Charles P. O'Brien rendered services for S. P. Lancaster during the period mentioned, and he believes that the charges therefor as set out in the account are reasonable;'' and of R. B. Lancaster, who says, ''That he has read the account of Charles P. O'Brien against S. P. Lancaster, and he knows that the said O'Brien performed services for said Lancaster during the period set out in said account, and he believes the charge therefor is reasonable and the account is just.''

Section 3870 of the Kentucky Statutes (section 3901, Russell's St.), making provision for the proof of claims like this, provides in part that: ''If the demand be other than an obligation signed by the decedent or a judgment, it shall also be verified by a person other than the claimant, who shall state in his affidavit that he believes the claim to be just and correct, and give the reasons why he so believes.''

It will be observed that it is not sufficient for the person, other than the claimant, to state that he believes the claim to be just and correct. He must in addition thereto give the reasons why he believes it to be just and correct. This is a very valuable statute, intended for the double purpose of protecting the estates of decedents, and to furnish the personal representative with evidence upon which he may safely pay debts presented against the estate with the reasonable assurance that they are just demands. In accordance with this statute, an account, if prac-

ticable to do so, should be itemized, and state with particularity what each charge is for, and the proving witness should give reasons sufficient in themselves to justify the personal representative in believing that the witness knows the claim and each part of it is just and correct. Dewhurst v. Shepherd, 102 Ky. 239, 43 S. W. 253, 19 Ky. Law Rep. 1260; Leach v. Kendall, 13 Bush, 424; Crane & Breed Mfg. Co. v. Stagg, 122 S. W. 225. But the statute should not be so construed as to put it beyond the reach of persons having meritorious claims to make proof of them. When, as in this case, the character of the claim renders it difficult if not impracticable to state with particularity the specific things charged for, the law will not require it. O'Brien rendered a variety of services, extending over quite a period of time, with no fixed agreement or understanding as to what he should do or when he should do it. What he did depended on when he was called upon by Mr. Lancaster. Under these circumstances we think the claim and the preliminary proof was sufficient.

A large amount of evidence was taken for and against the claim, and it seems unnecessary that we should give more than a general statement of the facts proven. The evidence conduced to show that O'Brien was a prudent, intelligent, good business man, as well as a capable accountant. He had in a large measure the confidence of Mr. Lancaster, and in 1896 was employed by him about his distillery, and continued in this employment until April 3, 1899, when the distillery was sold to the whisky trust and Lancaster quit the manufacture of whisky. Lancaster, after disposing of his distillery, devoted his attention to the management of his extensive farming interests, with which he combined the feeding

and slopping of cattle at distilleries, and the breeding and training of race horses. He owned and operated three farms, containing about 1,800 acres—one where he lived known as the "Home Farm," another known as the "Nicholls Farm," and another known as the "Withrow Place." It was at the Withrow Place that his distillery was located, and here that O'Brien lived. Lancaster was a man of fine business capacity, of large wealth, and very successful in his business ventures. Until about a year preceding his death, he enjoyed good health and gave active personal attention to his affairs, frequently visiting the Withrow place, which was several miles from his home farm. He was not fond of writing, and was in the habit during the years covered by the claim, of getting O'Brien, in whose judgment and business capacity as well as integrity he relied, to attend to a large part of his correspondence. It was shown that O'Brien bought cattle for Lancaster and sold them; that he often took his passbook to the bank to have it balanced; that he made different trips for him to various places, looking after his interests, and that he exercised in a general way supervision over the cattle being slopped at the distillery, and frequently attended to the shipment of them, and was often consulted not only by Lancaster, but by his employes in reference to the race horses that Lancaster was breeding as well as racing. One witness said that he heard Lancaster, on three different occasions, say to O'Brien when he wanted him to write a letter: "I don't want you to do this work for nothing; I intend to pay you for everything you do for me." Another witness said he heard him say that "O'Brien would be well paid for what he had done for him." But it

does not appear that O'Brien, during the life of Lancaster, ever presented any claim to him for services or demanded payment for his services or that he was paid anything. A number of witnesses who had opportunity of knowing the character and value of the services rendered by O'Brien testified that they were worth from $600 to $800 per year.

The evidence for the executor conduced to show that what service O'Brien rendered was done as a gratuity or accommodation to Mr. Lancaster for the kindness he had shown O'Brien, and not with any intention of charging for them; that Lancaster himself and a man named Hardie, who was the general manager of his farming interests, attended to all of his business except occasionally when he would get O'Brien to write letters or see some persons or go some place for him. It is strongly pressed in argument that although O'Brien only received for his whole time when he was working for Lancaster at the distillery previous to April, 1899, $75 per month when the distillery was running, and $50 when it was not in operation, that his bill against Lancaster for the occasional services rendered him was much larger than he was being paid when he devoted his entire time to his services, and that from April 3, 1899, until the death of Lancaster, O'Brien was regularly employed at a salary of some thousand dollars a year to manage the distillery that Lancaster had sold to the trust. The evidence is very satisfactory that the farms of Lancaster were managed by himself and Hardie, and that O'Brien had little if anything to do with the conduct of the farms. But the claim of O'Brien is not for attending to farms, but to other business matters in which Lancaster needed and had his assistance and services.

It is difficult to fix a fair value on the services rendered by O'Brien, as he was not regularly employed or engaged for any particular business. But that he did render services there can be no doubt, and that these services were of some value to Lancaster must be conceded. So that the case really comes down to the question of how much O'Brien's services were worth. The chancellor who considered the case and was doubtless personally acquainted with many of the witnesses allowed O'Brien in round numbers $350 a year with interest from the time the claim was presented until the judgment, and we are not prepared to say, in opposition to his opinion, that the allowance is excessive. In considering this case we have not overlooked the fragmentary character of the evidence for O'Brien or the evidence of Willet as to what O'Brien said in April, 1902, or the fact that his failure to make out and present any bill during the life of Lancaster is a strong circumstance against the validity of his claim. On account of these circumstances and others, if it were not clearly shown that during these years O'Brien rendered services that ordinarily one would expect to be compensated for, we would say that his entire claim might properly have been rejected by the chancellor. But, taking into consideration the undisputed fact that O'Brien during the years mentioned in the claim did for Lancaster many things that were useful and helpful, and the further fact that he said he expected to reward him for his labor, we do not feel warranted in holding that the allowance made by the chancellor is excessive.

Wherefore, the judgment of the lower court is affirmed.