## Keeney v. Cockill's Executor.

(Decided May 16, 1933.)

446

T. G. ANDERSON for appellant.

E. L. STEPHENS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Timothy Cockill, deceased, was a capitalist, residing in Pennsylvania. He was the owner of coal mines in Tennessee, just below the Kentucky line. They were in the name of the Bryson Mountain Coal & Coke Company, a corporation, but he owned all of the stock except one share in the name of the appellant, J. H. Keeney, and a nominal amount carried in the name of his two daughters to qualify them as directors. Since 1894, Mr. Keeney, a resident of Middlesboro, had been the general manager of that business and had operated it very successfully and profitably, the mines having yielded profits of around $800,000. Beginning about 1903, he commenced to buy up timber and coal land in what is now McCreary county for Mr. Cockill. At the time of his death in November, 1929, Cockill owned 8,500 acres of this undeveloped property. By ancillary proceedings his will was probated and his executor

qualified in McCreary county. Suit was filed by him there to have the local assets marshaled, the debts paid, and a settlement of the Kentucky estate made.

The petition alleges that Keeney had been employed by the decedent and represented his interests in Kentucky and Tennessee, and that as such representative he had been and was in charge of the McCreary county land; that his salary had been paid from the profits of the Bryson Mountain Coal & Coke Company, but that Keeney was claiming some other amount against the estate for his services. He was called upon to assert his claim. Keeney denied that his salary for this service had been paid by the coal company, or at all. He set up his services in relation to the land, and alleged that it was the understanding between the decedent and himself that he would be paid for those services from the proceeds of the land whenever such sale should be made. He alleged their reasonable value to be $17,500. The court adjudged him entitled to $7,500. He appeals from that judgment upon the ground that it is insufficient and contrary to the evidence. The appellee cross-appeals, and submits that Keeney did not show himself entitled to anything.

The appellant testified in the case. His incompetency as to transactions with the decedent was waived through the failure of the adverse side to file written exceptions, as required by sections 586 and 587 of the Civil Code of Practice. Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S. W. (2d) 922. Mr. Keeney's evidence is to the effect that his agency and services in respect to the land were distinct from his relation as manager of the coal corporation. His original employment or authority was by a letter written in 1903 by Cockill, but, it having become lost, Cockill wrote him the following on January 25, 1924:

> "Referring to my lands in McCreary County, Kentucky, on the waters of the Big South Fork of the Cumberland River, which you purchased for me and of which you have had charged ever since, I beg to advise as follows: I wrote you a letter authorizing you to act as my agent in the purchase and care of these lands and the making of expenditures in connection therewith, which I understand has been lost. I have examined, personally, your books, records and accounts, in connection with the same

up to the present time, and I now write you this letter taking the place of your lost letter as authority to you to continue your services as in the past as my agent in charge of the lands referred to and to take any action and incur any expense necessary in handling the same, protecting the titles and conserving the property. And this is further to serve as my approval and your quietus for all actions taken by you and expenses incurred by you in connection with the lands up to this date.''

Pursuant to that authority, Keeney bought the property in separate parcels at different times. He had the land surveyed, had titles examined and cleared by suits, paid the taxes, had several tests of the property made for oil and coal, and exercised active and constant oversight and management of it. The land had cost approximately $127,000, and the expense of maintenance had been about $49,000, making the total investment around $176,000. Except a comparatively small sum first advanced, this money had come from the treasury of the coal corporation. At one time an offer of $361,000 for the property had been refused by Cockill. Keeney's compensation as manager of the coal company (which was $500 a month for a time) did not cover services rendered in connection with this property, he testified. During this period, from time to time, Keeney submitted to Cockill his books and records containing items of expense, etc., and they were approved. Nowhere did he charge anything against the property or credit himself with any sum as compensation for his services. Mr. Keeney's counsel, suggesting that it would not be competent for him to state the arrangement made between Mr. Cockill and himself as to compensation, asked when and how he expected to be paid. His answer was that he expected to be paid when the land was sold or disposed of, and that the land had been bought as an investment for ultimate sale. This was his explanation for not having made any entry on the current account books in relation to his compensation. No question is raised that Keeney devoted a good deal of time and served his principal well and very satisfactorily in this service, covering a period of twenty-six years. That is shown by the testimony of the cashier of a bank at Somerset, through which the accounts had been handled, and of the land agent of a large coal and timber company owning similar tracts and operating them in the

same community, both of whom had personal knowledge of Keeney's services. The former expressed the opinion that $1,000 a year would not be excessive compensation, and the latter thought that $34,000 was reasonable. But, as stated, Keeeny was asking for only $17,500.

Another transaction or relationship between these two gentlemen was the purchase by them as partners in 1907 of 5,000 acres of mountain land, called the Gibson tract. Keeney put in $2,000 and Cockill (through the coal company) put in a balance of $33,000. The carrying charges, amounting to $30,000, also came from the coal company's profits. Keeney contributed his services to this venture, and, when the property was sold fifteen years later at a profit of about $100,000, it was divided equally between the two men.

There was no other evidence submitted.

It will be observed that appellant's claim for compensation rests upon an express contract of employment. The letter of Cockill simply confirmed the acts of Keeney as his agent in respect to this land and authorized him to continue in such capacity. It is significant that nothing was said as to compensating him for his services. It is reasonable to account for this upon the ground that the agent was already being paid for his services to the principal through the coal and coke company. Although he testified as to his expectation of receiving compensation, there is no evidence of any intention of the other party to the contract to pay it. There was no evidence of any meeting of minds on that point. On the contrary, we have the fact that the claimant was being paid a substantial salary as manager of the decedent's mining property, treated as if it were an individual business, as in reality it was, and the fact that he had been liberally rewarded for his services in the Gibson land transaction. The omission from Cockill's letter of any suggestion as to past or future compensation is very significant; and it is a potent fact that during the lifetime of the principal the agent never made any claim for compensation, or any entry on his books submitted to the principal as being a true index of the cost and expenses of the investment venture. This, too, was in the face of specific authority to incur any necessary expense in the operations.

It is held sufficient to establish an express contract of this character that there be proof of an expectation

450

on the part of one of the parties and an intention on the part of the other to make compensation. But the danger of spoliation of an estate, through claims of this nature, demands that the contract be established by convincing evidence, and that any doubt be resolved against the claimant. Marshall v. Ireland, 228 Ky. 354, 15 S. W. (2d) 289.

In Lancaster's Executor v. O'Brien, 136 Ky. 589, 124 S. W. 854, we have a case where a claim was asserted against a decedent's estate for services rendered as business manager under an alleged contract to pay reasonable compensation. O'Brien had made no claim during Lancaster's lifetime. He had kept the books, but made no entry in them as to his compensation. He had been employed on a salary by a distillery corporation owned by the decedent, and had continued in that employment after Lancaster had sold it. However, his claim asserted against the Lancaster estate was for services rendered after Lancaster had sold that business. The court regarded O'Brien's failure to present a claim during Lancaster's lifetime as a strong circumstance against its validity. But since it was clearly shown that the services were such as one would ordinarily be expected to be paid for, and it was undisputed that Lancaster had said he intended to reward him for his labor, the allowance by the chancellor of the claim in a reasonable sum was sustained. We do not have any such statements here, nor anything in the record indicating a recognition by Cockill of an indebtedness to Keeney or a purpose to compensate him.

We are, therefore, of the opinion that the claim should have been disallowed in its entirety.

The judgment is accordingly reversed on the cross-appeal, which, of course, carries also a reversal on the direct appeal.