## Springer v. Springer's Executrix.
(Decided Nov. 1, 1935.)

JOHN T. DIEDERICH for appellant.

E. POE HARRIS and SAM J. SPARKS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant, son of Charles Springer, deceased, sued appellee, executrix of the estate, for $3,000 for services alleged to have been rendered during the last five years of his father's lifetime.

Appellant claims in his pleadings that during the period mentioned he cultivated the farm, cared for livestock, and did all work necessary in farming. He says his father was in bad health, practically helpless, and required his constant help in caring for the farm. It is pleaded that the alleged services were rendered at the special instance and request of the decedent, and that appellant relied upon the promises of deceased to "fully compensate him," and his promise to provide a sum amply sufficient to fairly compensate him in his last will. He alleges that decedent breached his agreement because he only left him $400 by his will, which was not an amount sufficient to pay him for his services, and failed to compensate him for such services, which he says were reasonably worth $12 per week for the five-year period, and he asks judgment in the sum of $3,000.

Appellee, denying the allegations of the petition, affirmatively alleged that there was a contract between deceased and appellant, in which it was agreed that he was to cultivate his father's farm on a crop-sharing basis, and that appellant did nothing on the farm not contemplated in said agreement. She alleges that if appellant did perform any sort of service beyond such as were covered by the crop contract, same was gratuitous. She also alleges that appellant was left $400 by his father's will, which sum is greater in amount than would reasonably compensate for services so rendered, if any. She asks dismissal of the petition, or, in case of adverse judgment, that the $400 be set off against same.

Trial was had, and at the close of the testimony for plaintiff, the appellee moved for a directed verdict, upon which the court did not then rule, but reserved his ruling until all testimony was heard, when upon a renewal of the motion same was sustained over objection and exception by appellant, and it is on this ruling of the court alone that the appeal is prosecuted. The question presented is as to whether or not the proof adduced on behalf of the appellant measured up to the quality necessary to carry his case to the jury. The only witness who testified on the question of services rendered in the furtherance of any sort of express contract, or to any facts or circumstances that would tend to uphold an implied contract between the parties, was a son of appellant. This witness admits that he was away from his home for, perhaps, more

than half the time during the five years from 1923 to 1928 (the period covered in the suit), and he does not show a broad knowledge of what occurred when he was at home. He says in substance, that his father spent about half his time working on his grandfather's place, cultivating crops, building and fixing fences, attending livestock, mowing and storing the hay, and "took care" of the ditching.

The witness admitted that his father had an agreement with deceased whereby appellant was to cultivate corn, oats, and wheat, and that under this crop-sharing contract appellant was to get one-half the corn and two-fifths of the wheat and oats, he paying for threshing. This working agreement continued over a long period. The only items mentioned which might not have been contemplated in the cropping contract are the repairing and building of fences, mowing and storing hay, and attention to livestock. On the matter of cutting and storing of hay, he does not undertake to show how much of this was done, or the length of time consumed in this labor. As to the livestock, it was admitted that deceased only had four or five milk cows and at times their calves, and a couple of work teams. The volume, extent, or value of this labor is not shown. On the fence building proposition, the witness was quite at sea. He said there was a considerable stretch of fence built, and much repairing but when pressed to estimate the amount, he could not say, until counsel reminded him that an ordinary city block was about 300 feet, asked the witness to estimate the length in city squares, and he replied that it would be "four or five hundred squares anyway," which, if the witness intended to adopt 300 feet as representing the distance between two intersections on one street, would mean more than twenty miles of fencing, whereas four miles of fencing would be all that is required to surround 640 acres.

Asked if he knew about any agreement between appellant and deceased "as to how the farm should be worked and how he should be compensated and paid," he answered, "Grandfather said he would pay him, and so father wanted to buy part of the ground that laid back of us, and he said, 'Bill, it will be yours some day anyhow,' that's the words he said."

In a general way, showing anything that would indicate a discussion as to work or pay, the witness

said, "Grandfather said four or five times, he would pay for the work father was doing, but he never paid him, or at least I never heard of him paying anything."

Several other witnesses, about six in number, some neighbors, and some employed on the decedent's farm, testified that appellant had worked on his father's farm; had built and repaired some fencing, and had mowed and stored some hay. One witness says appellant helped make some posts. Very few of them knew of any work outside of the cultivation of corn, oats, and wheat, and perhaps the gathering of hay. They say they had seen appellant "farming, plowing, patching fences and hauling out manure."

The only witness, other than the son of appellant, who testifies to anything, which by a stretch of imagination could be twisted into a contract, testified about some fencing, how much he did not know, and when asked if he had ever had a conversation with deceased about appellant, said, "Well Mr. Springer told me some two or three times that his son had asked to buy a piece of land off the side of the creek, right across from where the building is, and he said it 'weren't no use for him to buy it because it would not be great while until it would belong to him anyhow.' "

Of these six witnesses some three or four testified as to the value of farm services generally. None of them undertook to fix the value of the items above mentioned, and none to any facts which would imply a contract.

The record shows that appellant owned, cultivated, and lived upon a farm of about 58 acres, immediately adjoining his father's 156-acre tract; that the son kept at all times more livestock than the deceased, and that they were grazed on the farm of deceased in common with his cattle; that the deceased kept farm hands employed the greater portion of his time; that his widowed daughter lived with him, and not only cared for him, but looked after the farm, even to the extent of doing some of the manual labor; that the deceased was able to pay, and did pay punctually for services rendered him.

Counsel for appellant relies mainly on Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, and Stidham et al. v. O'Neals' Adm'r, 245 Ky. 667, 54 S. W. (2d) 54, as upholding his contention that there was

sufficient proof of a contract to take his case to the jury. In the Kellum Case the court found the facts to be sufficient to require a submission, but the facts here fall short in comparison with the facts there. There is no doubt, upon principles laid down in the Kellum Case, that on a proper showing appellant would have had ground for recovery, either on an express contract or a contract implied in fact. The burden was on appellant to prove his claim in all its parts, either a categorical express contract, or a contract implied in fact, as to the rendition of services and the expectation and promise to pay, all of which evidence must be of sufficient quality to manifest or prove a mutual meeting of the minds of the parties contracting. Kellum Case, supra.

In the Kellum Case the court went to great length in illuminating the vexatious question of the rights of relatives and strangers to recover for services rendered one since deceased, and to no lesser length in pointing out the nice distinctions between contracts expressed or implied, and the quality of proof necessary in each class of cases. A great number of cases in point, both in this and other jurisdictions, were reviewed, but, after all, adhered to the established rules, except in one case, where it had been held that a near relative could not recover on an implied contract for other than strictly personal services. Green's Ex'r v. Green, 119 Ky. 103, 82 S. W. 1011, 26 Ky. Law Rep. 1007.

In this case appellant rested on what appears to have been alleged as an express contract, but whether it was intended so or not, his proof does not measure up to what is required in order to recover. The general rule is that recovery of the character here presented must be founded on convincing proof; on certain and not uncertain evidence. This court has held time and again that in order to establish a contract such as would warrant recovery for services rendered a decedent by a near relative, there must be more than a casual conversation, or a mere expression of an intention to pay. The minds of the parties must meet, and the evidence must show at least that the party rendering the services rendered same with an expectation of compensation, and that the party to whom such services were rendered must know of and agree to satisfy that expectation. Armstrong's Adm'r v. Shannon, 177 Ky. 547, 197 S. W. 950; Bolling v. Bolling's Adm'r, 146 Ky. 313, 142 S.

W. 387, Ann. Cas. 1913C, 306; Lucius' Adm'r v. Owens, 198 Ky. 114, 248 S. W. 495; Keeney v. Cockill's Ex'r, 252 Ky. 445, 67 S. W. (2d) 490. The rule is laid down in DeFever's Ex'r v. Brooks, 203 Ky. 606, 262 S. W. 976, 978, in which after reviewing many cases the court said, as applicable to express and implied contracts:

"The above cases hold that if the proven facts and circumtances are such as to fairly show that both the party rendering the services and the one receiving them expected, understood, and intended that compensation would be made, then the court or jury trying the case would be authorized to find an express contract for payment. Differently stated, our rule, as announced in those cases, is that if the proof shows that the one rendering the services expected to receive pay therefor and the one receiving them had knowledge of such expectation and himself intended to pay therefor, then an express contract may be found."

There is little by way of proof here that measures up to what the court conceives to be necessary to permit a recovery, and if it be apparent that there is no basis for recovery, then the court is warranted in taking the case from the hands of the jury.

It is not difficult to conclude from the proof that such services as were rendered, not contemplated in the cropping contract, were rather trivial, and such as might easily have been gratuitous, and the inference seems clear that all the items emphasized were for services rendered just as much for the immediate benefit of appellant as to the deceased, and that there was no expressed intention to charge for such services, and no knowledge of an intention to charge or pay therefor, in the mind of deceased.

On the question directly before us, we must and do hold that the court's ruling was correct.

Judgment affirmed.