**JOHNSON'S ADM'R et al. v. JOHN-
SON et al.**

**JOHNSON v. JOHNSON'S ADM'R et al.**

Court of Appeals of Kentucky.

Oct. 26, 1951.

Rehearing Denied Feb. 1, 1952.

King ·Swope, Frank S. Ginocchio, Lexington, for administrator.

Yancey & Martin, W. B. Martin, Stoll, Keenon & Park and James Park, all of Lexington, for L. A. Johnson.

STANLEY, Commissioner.

In a suit to settle the estate of Albert S. Johnson, the court confirmed the report of the Master Commissioner allowing certain claims asserted by the decedent's son, Louis A. Johnson, and claims against him which aggregate substantially the same sum. It likewise denied certain claims. We have appeals and cross-appeals by the personal representative and the claimant. It is necessary to consider only the items yet in dispute, some of the findings and awards having been agreed to.

Albert S. Johnson died testate June 30, 1943. His estate was conservatively estimated to be about $135,000. He was survived by his widow and two sons, Edward and Louis. He devised $40,000 in trust for Edward, who was a confirmed invalid, with remainder over to his children, but if none, to Louis' children. He directed that the balance of his estate be divided in two parts, one for Edward upon the same trust and the other for Louis for life with the remainder to his issue. All bequests were subject to the life estate of their mother. She died within six months of her husband.

1. The judgment awards Louis $14,500, subject to a credit of $3,500, under a contract for services rendered his father and expenses incurred in looking after and managing his farms. As first asserted the claim was a verified, itemized statement of account covering 7½ years at $2,000 a year. The pleading of an express contract to pay for these services after death of the father came after the executor plead the five-year statute of limitations.

The report of the Commissioner on the relations and activities of the decedent and the claimant is in considerable detail. There is evidence to sustain the finding that services were rendered and expenses incurred as claimed. However, there is evidence in contradiction, though it is of a general, negative character, plus some circumstances which afford the conclusion that the services were not of a substantial character and that they were rendered to the father by reason of the relationship and interest of the son.

The only evidence of an express contract is the testimony of the claimant's wife, Mrs. Louis Johnson. In summary, it is that in the spring of 1933 she complained to his father that Louis was spending a lot of time and wearing out his automobile in looking after his affairs, which he could not afford to do; and his father replied, "Well, Louis and I have entered into an agreement that I am to pay him $2,000 a year for his services and running his car." She also testified that the father stated he would pay Louis at his death "so that he would have that money in a lump sum and would be saving it for him for later life." The court accepted this as proof of an express contract.

The Commissioner reported, in effect, that he had overruled the administrator's exceptions to the testimony of Mrs. Johnson, under the terms of subsection 1 of section 606 of the Civil Code of Practice, which relates to the testimony of a husband and wife in actions for or against the other. Without special reference, the court confirmed this ruling. It seems to us that subsection 2 of section 606 is the controlling provision. That disqualifies a person from testifying "for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done * * * by one who is * * * dead when the testimony is offered to be given." The exceptions are inapplicable. In Truitt v. Truitt, 290 Ky. 632, 162 S.W.2d 31, 140 A.L.R. 1127, we carefully considered the question of disqualification of a husband to testify for his wife to a statement of her deceased father which was favorable to the wife. We held that the husband's present interest in his wife's estate, particularly her real property, is of such beneficial character that it disqualifies him as a witness in her behalf under subsection 2 of section 606 of the Civil Code of Practice. This was followed in Denney's Adm'r v. Albright, 298 Ky. 696, 183 S.W.2d 937, holding that testimony of a husband of an heir is not competent to defeat a claim for personal services. And in Gardner's Adm'r v. Dale, 309 Ky. 869, 219 S.W.2d 40, we held a husband disqualified to testify concerning a statement of a deceased person against whose estate his wife was asserting a claim for personal services. These decisions are supported by earlier cases holding that a husband cannot testify on behalf of his wife concerning a matter to which she herself could not bear witness, Bright's Ex'rs v. Swinebroad, 106 Ky. 737, 51 S.W. 578, 21 Ky.Law Rep. 369; Bright's Ex'rs v. Bright's Legatees, 99 S.W. 901, 30 Ky.Law Rep. 834; Collins v. Lawson's Committee, 140 Ky. 510, 131 S.W. 262; Hollingsworth v. Barrett, 89 S.W. 107, 28 Ky.Law Rep. 280; Doty v. Dickey, 96 S.W. 544, 29 Ky. Law Rep. 900; Baskett v. Rudy, 186 Ky. 208, 217 S.W. 112. A later case is Conley v. Coburn, 297 Ky. 292, 179 S.W.2d 668. In the present case, the recovery by Louis Johnson of so large a sum of money from the estate of his father would naturally result in substantial benefit to his wife. Her interest in the recovery, therefore, is such as to disqualify her as a witness concerning the statements of her deceased father-in-law, upon which statements the claim of an express contract rests exclusively. Therefore, there is no competent proof of an express contract.

In the absence of categorical evidence of an express contract, we turn to the right of the claimant to recover on a contract implied in fact.

The decedent was an active, busy man of affairs. He gave general oversight to his farms. The son was principally engaged in his own business and affairs, but did assist his father in looking after the farms and relieving him of details. The extent is in issue. There were only two

children, and Louis' brother was an unmarried, chronic invalid. It is a reasonable deduction that Louis, not only as a dutiful son but as a prospective heir of the property, was interested in assisting his father in a substantial way without any intention of receiving specific compensation or present benefit. The conditions and circumstances were not such as, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract. There is no disclosure of facts from which it may be inferred there was a meeting of minds or an expectation that one party would receive payment for the services rendered and the other would pay for services accepted. This is what we call a contract implied in fact. Kellum v. Browning, 231 Ky. 308, op. cit. 319, 21 S.W. 2d 459, op. cit. 465. Louis owed his father notes aggregating $15,650, and this raises the presumption he was not working for his father under a contract for pay. Cf. Jones v. Jones, 210 Ky. 38, 275 S W. 7. The father's will is also potent evidence of no agreement, although it is, of course, recognized that one may not avoid liability on a contract by the terms of his will. It is, however, a factor to be considered. The high quality of evidence required to prove clearly and convincingly a claim for services to a decedent occupying such close relationship is lacking. See Springer v. Springer's Ex'x, 262 Ky. 121, 89 S.W.2d 624; Carpenter v. Carpenter, 299 Ky. 738, 187 S.W.2d 283. We conclude the court should have disallowed this claim.

2. Louis Johnson was in the insurance agency business and insured all of his father's property. The court allowed his claim for $1,610 for unpaid premiums, the account having accumulated from August 1, 1932, to December 5, 1941. This claim was based upon an implied contract except the plea that it had been agreed payment should not be made until the death of the father. This, of course, would preserve the claim beyond five years. It was clearly established by the records of Louis Johnson's office that the insurance had been written and the premiums charged. They did not show payment, although, according to his employees, monthly statements had been duly rendered in accordance with the rule of the office. It appears that for awhile Albert S. Johnson had paid the premiums. There was no record showing that any part of this account had been paid. The administrator produced some canceled checks given for insurance, but the last was dated July 7, 1932. All of these had been duly credited. The administrator did not introduce any evidence of payment of the asserted account beginning August 1, 1932, except a formal letter written by Johnson's office requesting payment of $331.78 for insurance.

The degree of credence to be given books and records of account depends upon their character and the circumstances. Often they are regarded with suspicion for they are usually of a self-serving nature. Martin v. Taylor's Ex'x, 285 Ky. 128, 147 S.W.2d 70; Hopkins' Ex'x v. Osborne, 278 Ky. 229, 128 S.W.2d 575, 142 A.L.R. 1403. But the books in the present case were regularly kept by clerks in an office doing a substantial business and there is no reason why they should not be accepted at face value and without suspicion. Johnson's Adm'r v. Pigg, 242 Ky. 631, 47 S.W.2d 63; Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498. That a modern looseleaf system of bookkeeping was used does not militate against competency, other conditions being present. Gus Datillo Fruit Co. v. Louisville & N. R. R. Co., 238 Ky. 322, 37 S.W.2d 856.

As was the practice in prosecuting the claim for services, the plea of an express contract came some time after the itemized statement of account had been filed with the personal representative. The delay in making this plea may be regarded as weakening the claim of an express contract. On the other hand, we have the legal fact that it was not necessary for the plea to have been made until the administrator undertook to close the door by pleading limitations. The proof of this express contract rests also upon the sole testimony of Mrs. Louis Johnson. She sometimes worked in her husband's office and appears to have been present at frequent conversations between him and his father. She

related there had been discussions in her presence regarding insurance on the property, the amount, etc. With regard to the premiums, Mr. Johnson had told Louis, "Just let it ride on and he would pay for it at his death, just give him a lump sum." She was not cross-examined on this point.

■ What has been said in regard to Mrs. Johnson's disqualification to testify concerning the alleged contract for personal services applies to this one. However, this claim, based as it is on commercial transactions, is in a different class. Kinship is not a factor. The legal presumption is that the account would be paid. The proof is that it was not paid. The reason is speculative in the absence of the incompetent testimony of the claimant's wife. The major part of the account represents money paid out by Louis to the insurance companies, and the expense of operating his agency. The liability for the·debt exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention. Kellum v. Browning, 231 Ky. 308, op. cit. 319, 21 S.W.2d 459, op. cit. 465. However, the amount recoverable must be controlled by the five-year statute of limitations, KRS 413.120.

3. We come to the claim of the estate against Louis A. Johnson on a note for $3,150. The court held that it was barred by limitations, which ruling the administrator contests.

The note was executed by Kelly E. Watts to Louis A. Johnson on January 25, 1929, and was payable four months after date. He transferred it to Albert S. Johnson by an undated endorsement in blank. Louis pleaded in defense that the·note was placed on the footing of a bill of·exchange by its negotiation for value before maturity, Coleman v. Coleman's Ex'r, 189 Ky. 96, 224 S. W. 668, and he relied upon the five year` statute of limitations. KRS 413.120(8). The appellant submits that since limitations is an affirmative defense, the burden was upon Louis as transferee to prove that the negotiation occurred before maturity so as to bring it within the terms of this statute rather than the fifteen year· statute.

KRS 413.090. This would be true except for KRS 356.045 which provides: "Except where an endorsement bears date after the maturity of the instrument, every negotiation is deemed prima facie to have been effected before the instrument was overdue."

■ Since this statutory presumption as to time of transfer is not intended to shield a wrong nor to forgive inexcusable or unexplained laches or neglect, slight evidence, which may be circumstantial, will overcome the presumption and shift the burden to the endorser to show that the· instrument was in fact negotiated before maturity. 11 C.J.S., Bills and Notes, § 661b. No evidence as to the date of the transfer of this note was introduced by either party. If regard be had for the proven impecunious condition of the endorser, Louis Johnson, the circumstance permits the indulgence of a presumption that the note was turned over to his father for cash pretty soon after it came into Louis' hands. In the absence of any evidence to the contrary, the statute was properly applied and the note properly held to have been barred.

■ 4. Louis A. Johnson appeals from so much of the judgment as charged him with a $5,000 note executed to his father under date of July 14, 1932. He pleaded no consideration. Again he relied upon the testimony of his wife principally. She related that the note and a mortgage on Louis' business were executed in his office. When she hesitated to sign the mortgage, her husband insisted, saying to her in the presence of his father that, "there wasn't a thing to it, it was a friendly mortgage." His father said, "There is nothing for you to worry about, no money involved." We must exclude Mrs. Johnson's incompetent evidence, but Miss White, a clerk in the office, undertook to corroborate Mrs. Johnson, saying it was only a "security note" and no money passed. But she was not clear in her testimony for, as she said, "it has been a good many years ago." Shortly before this date, an insurance company had obtained a judgment against Louis and Miss White testified that some of the·companies he repre-

sented were "shaky," it being during the depression.

On the contrary, beside the force of the note itself with the legal presumption of a valuable consideration, the administrator presented the decedent's paid check for $5,000 to Louis on July 15, 1932, the date of the note. There is no difficulty in affirming this part of the judgment.

On the administrator's appeal, the judgment is (1) reversed to the extent that it awards any recovery on the claim for services and recovery beyond five years on the insurance account, and (2) affirmed in disallowing recovery against the appellee on the note for $3,150. On Johnson's appeal from so much of the judgment as charges him with the $5,000 note, it is affirmed.