## Scanlon's Ex'r v. Hinz.

Jan. 11, 1944.

As Modified on Rehearing Feb. 29, 1944.

C. E. Rankin and Abraham & Guthrie for appellant.

Wade & Mapother for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellee sought to recover from the estate the sum of $583 for labor and services performed during the lifetime of Mrs. Scanlon. We incorporate the account rendered, payment of which was refused on presentation:

"Nursing services, 32 visits at $3.00 per visit, $96.00; patient to and from hospital, 5 trips at $3.00 per trip, $15.00; nursing and board in my home, six days, $5.00 per day, $30.00; 105 trips to Cave Hill Cemetery, $2.— per trip, $210.00; miscellaneous trips—doctor, grocery, funerals, bus station, depot, etc., $232.00."

An only sister, who lived in Harrodsburg, intervened and answered by denying the allegations of the petition, save that which asserted Mrs. Scanlon's death. The case was first tried in May 1943, resulting in a verdict for appellee for the full amount claimed. For some reason not here appearing the court granted a new trial, and later a retrial resulted in a similar verdict upon which judgment was rendered; motion for new trial was overruled and this appeal follows.

In the motion for a new trial six or more grounds were advanced; here they are reduced to, (1) the evidence was insufficient to take the case to the jury, hence the court was in error in refusing to sustain appellant's motion to direct a verdict, both at close of appellee's and all the testimony. (2) The motion should have been sustained because there was neither allegation nor proof of the reasonable value of the alleged services; (3) Instructions were erroneous in that they did not correctly define express contract; (4) the evidence in respect of services rendered (in use of automobile and nursing) was incompetent; (5) the court erred in allowing interest.

Mrs. Scanlon had other relatives in Louisville, and one sister (Mrs. Gray) who lived in Harrodsburg. At the time of her death she was past seventy-six years of age; during the latter years of her life she was a confirmed invalid; she had kidney trouble and neuritis, leading to arteriosclerosis, and during a five-year period was frequently, if not regularly, attended by physicians at home, and at times in various hospitals. She lived alone on the second floor of a residence which she owned, renting the first floor. Her undated will was probated; in this she had given some small items to Mrs. Hinz; small bequests to other relatives, some to those not related;

other bequests were to church or charitable institutions; the latter failed because of uncertainty.

Mrs. Barbara Ward, her son and daughter, occupied the first floor of Mrs. Scanlon's residence. They all, insofar as pertinent facts are concerned, testify similarly, agreeing that Mrs. Scanlon was a confirmed invalid, needing and demanding almost constant attention. It was shown that frequently Mrs. Scanlon would call Mrs. Hinz over the phone and ask her to come to her assistance. She frequently brought her meals; she took her to the bus and railroad stations; to Cave Hill Cemetery and to the grocery where she traded, which was a distance from Mrs. Scanlon's home. When Mrs. Hinz came to the home she cooked for Mrs. Scanlon; bathed her; gave her medicine, and sometimes stayed with her all night. Mrs. Ward, while saying that she had never heard Mrs. Scanlon say she intended to pay for services of Mrs. Hinz, frequently heard her say she ought to be paid for what she was doing.

Dr. Bloch attended decedent for about five years before her death. He describes her as a semi-invalid during this period. He said that on some occasions Mrs. Hinz brought Mrs. Scanlon to his office, and when he attended her at home he frequently found Mrs. Hinz there assisting her. He classified Mrs. Hinz as a "practical nurse," and thought her services were worth at the least "ten dollars per week;" that the usual charge where practical nurses were hired by the hour, "to straighten up the beds, give a sponge bath or enema, or things of that kind, would be a dollar and a half or two dollars per hour."

Up to this point there is little testimony showing that Mrs. Scanlon expected to pay, or Mrs. Hinz expected to charge, for the services. However, Betty Jane Hinz, the sixteen year old daughter of appellee, who had frequently gone with her mother on trips to the Scanlon home and elsewhere, testified to these facts, as well as to the frequent telephone calls from Mrs. Scanlon and her mother's responses, coming during the day and sometimes late at night. Her trips to the cemetery were as often as twice a week, and as frequently to the grocery and other places. Mrs. Hinz at one time brought her to her home where she remained for a week; at other times she would prepare meals and take them to Mrs. Scanlon's home. The girl said that during the times her

mother was in the home she rendered about the same service she would have received at the hospital. The girl said she had many times heard her mother and Mrs. Scanlon discuss the matter of services; that Mrs. Scanlon said on several occasions that she expected to pay, but had fixed no definite amount.

Counsel for appellant introduced no evidence touching upon either rendition or value of services. He presented a court officer who produced and introduced Mrs. Scanlon's will, and a relative whose testimony threw no light on the issue, thus standing on the challenge that the proof was insufficient, not so much as to services rendered but to their value, and as tending to show that the services were rendered gratutiously.

The parties were either first or second cousins. While they both resided in Louisville their homes were some distance apart, and Mrs. Hinz had her own family and domestic affairs to look after. It would hardly do to say that there existed such relationship, or situation as would create the presumption that Mrs. Hinz was giving of a great portion of her time, acting as cook, nurse, housekeeper, and chauffeur, doing other menial work, at the call of Mrs. Scanlon. The services rendered were not of such ordinary character that even a close relative might be expected to perform, at times suiting the convenience of the benefactress, without expectation of pay. Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459; Allen v. Smith, 208 Ky. 207, 270 S. W. 782. As we view the proof this case is brought very close to the case of Clark v. Hale, 209 Ky. 496, 273 S. W. 39; Sneed's Ex'r v. Smith, 255 Ky. 132, 72 S. W. (2d) 1028; Bard v. Bard, 279 Ky. 683, 132 S. W. (2d) 44.

Counsel for appellant insists that there is no evidence of a promise to pay Mrs. Hinz for her services. It is true that the evidence does not show in haec verba a binding promise; however, the testimony of the ninety year old lady, Mrs. Ward, the nearest neighbor, and the sixteen year old girl, show on the one part an intention of decedent to pay, and sufficient showing that Mrs. Hinz was not acting gratuitously. The testimony of the young lady is criticised because couched in terms which might indicate considerable precoaching. This may have been true, but we find nothing to indicate that the girl's evidence might have been successfully challenged for verity. We are of the opinion that even if there existed such

relationship as would have supported the inference of free services, there was ample proof to overcome the inference.

We have mentioned above the evidence of Dr. Bloch as to his opinion of the reasonable value of the services of Mrs. Hinz in the capacity of a practical nurse; this is criticised, but we think it was sufficient to give a fair estimate of their value. A greater part of the total of $583.00 consists of services rendered in taking Mrs. Scanlon at frequent intervals to the cemetery where her husband was buried; to trains, bus stations, hospitals, and to the grocery, a distance from her home. A taxi driver, who had on some occasions taken Mrs. Scanlon to the cemetery, testified that the usual charges on hourly basis was $2 per hour, and that it took an hour and a half to make the trip, which would make his charge $3; the rates were controlled he said by a city ordinance.

It is contended that this evidence was incompetent, because the rates were those charged by a corporation having a costly franchise, with payments of licenses, fees, etc., not common to the ordinary car owner or driver. Mrs. Hinz did not, as appears, make the customary charge made by the taxi driver, at least when using and driving her car to the cemetery. Even had she done so her charges would not be out of line, since there can be little doubt that in making these various trips she showed more care and attention to Mrs. Scanlon than a taxi driver would without extra pay.

The proof was competent to give to the jury an idea as to the reasonableness of the charges for automobile service rendered by Mrs. Hinz. It is true that in many respects the testimony might be classed as somewhat weak, and not all-covering, but there were no charges for services which required the testimony of an expert on value; they were usual every day services, the reasonable value of which a jury of ordinary intelligence would well know. In Clark v. Hale, supra, we indicated that there should be a broad latitude in proof of value of ordinary services. Obviously there can be little question as to the reasonableness of the value of the services rendered.

It appears that the instructions given followed those in Galloway's Adm'r v. Galloway, Ky., 70 S. W. 48, and it is admitted that if the plaintiff was entitled to go to the jury under the proof, the first instruction was correct. The objection to the second instruction relates to

the use of the word "and" where it is contended the word "or" should have been used, in that part which after advising the jury that although they might believe the services were performed by Mrs. Hinz, at Mrs. Scanlon's instance and request, said, "yet if you believe said services were performed without any intention at the time, on her part to charge therefor, and without any intention or agreement of Mrs. Scanlon to pay, the law will presume 'gratuity,' and is for the defendant." It cannot be conceived that the jury went into such close analysis of the language as would have led them astray; that the misuse of the word, if a misuse, would be prejudicial. The form given here seems to have been approved in Sneed's Ex'r v. Smith, supra.

However there appears to be an error which requires a reversal of the judgment in one respect only. In his instructions the court told the jury that if finding for the plaintiff they might make the award "with or without interest in your discretion from August 14, 1942," which was the date of Mrs. Scanlon's death. The jury's verdict awarded interest at 6% without fixing date, and the court adjudged interest from the date named. We had almost precisely the same situation in Mussinion's Adm'r v. Herrin, 252 Ky. 495, 67 S. W. (2d) 710, 715, and wrote: "Under the pleadings and the evidence, the appellee was not entitled to interest except from the date of the rendition of the judgment; the amount not being liquidated until the verdict of the jury. The so allowing of interest was not a clerical misprision. Colovas v. Allen Motor Co., 242 Ky. 93, 45 S. W. (2d) 809. It was an error of the court entitling the appellant to a reversal."

Following this ruling we are compelled to reverse the judgment, with directions to enter judgment allowing interest on the award from the date of judgment.

Judgment reversed.